[Crim. No. 1233. Fourth Dist. May 22, 1958.]

THE PEOPLE, Respondent, v. PAUL EUGENE WALKER, Appellant.

Paul Eugene Walker, in pro. per., and Edward H. Spraker, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Herschel Elkins, Deputy Attorney General, for Respondent.

MUSSELL, J.—Henry Pilgrim, Guy Albright and appellant Paul Eugene Walker were accused of the crime of burglary (Pen. Code, § 459) in an information containing two counts. In count one they were charged with having entered "Ed's Lawnmower and Gun Shop" in Fresno with intent to commit theft therein and in the second count with having entered the L. H. Butcher Company building in said city with like intent. Appellant was also charged with two prior felony convictions. He admitted these prior convictions and he and Albright were tried by a jury which returned a verdict finding them both guilty of burglary in the second degree as charged in counts one and two of the information. Appellant was sentenced to imprisonment in the state prison for the term prescribed by law and appeals from the judgment of conviction.

On April 7, 1957, at about 10:30 p.m., William Brunson, operator of "Ed's Lawnmower and Gun Shop" in Fresno was called to his store and noticed that the front door had been broken into. There was glass on the floor and 27 guns had been stolen from the gun rack. Three BB guns taken had tags attached to them and one of the rifles taken had been received in a trade.

The branch manager of L. H. Butcher Company was in his establishment in Fresno on Sunday, April 7, 1957, and when he left, he locked the door to the building. When he returned later in the day he found that a window had been smashed, the door had been opened, and two office machines, a typewriter, including the cover, a calculator and an adding machine had been stolen from the building.

At about 10 p.m. on April 7, 1957, a Mr. Kirkman and his wife were driving past the gun shop when they saw a 1949 black Mercury automobile, license Number FAE 470, parked in front of the shop. Mr. Kirkman testified that "it looked like someone was sitting in the car"; that he observed two men carrying guns from the shop to the car and that they drove away; that he followed the black car, stopped a police car two blocks away, and "yelled the circumstances to the officers."

Mr. Hillman, who resided near the shop, testified that he heard a crash, saw two men inside the shop, and saw one man run out of it with an arm load of guns; that the man put the

guns in the car; that he, Hillman, thought it was a black Mercury sedan; and that "the silhouette," or whatever it was, looked like a man sitting in the front seat of the car behind the wheel."

At about 2 a.m. on April 8th Officer Al Smith, employed by the highway patrol, stopped a 1949 black Mercury, license Number FAE 470. There were two men sitting in the front seat of this car. Defendant Pilgrim was driving and defendant Albright was in the right front seat. The appellant was lying in the back seat with a coat over his head and apparently had been sleeping. There was a rifle in the back seat. Other officers searched the Mercury about 2:45 a.m., April 8th, and found the rifle in the back seat of the car. It was later identified as one of the guns taken from the gun shop. They also found in the car a 16-inch silver pry bar, a flashlight, two ball peen hammers, a pair and a half of gloves and some tags. These tags were found to be the ones which had been attached to the three BB guns which had been stolen from the gun shop.

On the day of his arrest appellant stated to one of the officers that he lived part time at 732 North Second Street in Fresno; that he was with two other people on the night of April 7th and that they were the ones with whom he had been arrested; that he had been around Hanford with them and that they were on their way to Fresno when arrested. Officers went to the Second Street address and found the typewriter cover which had been stolen from the Butcher building under the mattress on a cot. The cover was wrapped around a box which had been given to appellant on the last day of March, 1957.

Between May 3rd and May 6th Melvin Jones, a prisoner in the Fresno city jail, had a conversation with appellant in which appellant stated that he went for a ride in a Mercury automobile; that they went to Hanford and were arrested on the way back; that some rifles were involved and they were in the back of the car; that somebody broke the glass and obtained entrance through the door; that there were three in the car when they were arrested; that two went into the place and got an armful of rifles and handed them through the window to "the guy in the back seat"; and that they had the typewriter cover at the house.

George Lindsey testified that a week or so after April 19, 1957, he had a conversation with appellant in the city jail and that appellant there stated that he and the "guy who was driving the car went over to this building and broke the

glass''; that ''the guy who was driving the car opened the door and each one of them got an arm load of guns, went back out the door and handed them to someone else that was in the car''; that they were chased by a sports car and after they lost him they went to Hanford and stashed the guns in a barn.

Appellant does not contend that the evidence was insufficient to show that two burglaries were committed but argues that there was a lack of evidence to connect him with them. This contention is without merit. ■ The evidence that one of the stolen guns was found in the possession of appellant, that the pry bar, gloves and tags from the stolen BB guns were found in the car in which appellant was riding when he was arrested three or four hours after the burglaries, and the admissions made by appellant to the witness Lindsey are amply sufficient to connect appellant with the burglary of the gun shop. This evidence, together with the fact that the stolen typewriter cover was found under a mattress in a room occupied by appellant, and the fact that the typewriter cover was wrapped around a box belonging to appellant, as well as other facts and circumstances shown by the record, were sufficient to connect appellant with the burglary of the Butcher Company building.

■ As is said in *People* v. *Wissenfeld*, 36 Cal.2d 758, 763 [227 P.2d 833]:

''While the mere possession of stolen property is not alone sufficient to sustain a conviction of grand theft (citation), such possession plus 'slight corroborative evidence of other inculpatory circumstances' will suffice. (Citations.)''

It is further argued that separate trials should have been ordered or a motion for a mistrial granted because evidence was introduced of admissions made by a codefendant not in the presence of appellant. This argument is likewise without merit. ■ In *People* v. *Isby*, 30 Cal.2d 879, 897 [186 P.2d 405], the court said:

''There is likewise no merit to defendants' position that the court erred in refusing to grant their respective motions for a separate trial. The code section bearing upon this subject provides that when two or more defendants are jointly charged with a public offense, whether felony or misdemeanor, 'they must be tried jointly, unless the court order separate trials.' (Pen. Code, § 1098.) And it has been held repeatedly that a defendant so charged is not entitled as a matter of right to a separate trial (citations), but that the question of severance is one that must be left necessarily to the deter-

mination of the trial court in the exercise of its sound discretion. (Citations.) It is not an abuse of discretion to refuse to grant a demand for separate trials because damaging testimony, admissible against one defendant and not against the other, may be received in the case, but it is then incumbent upon the court to limit such evidence in its application to the defendant to whom it is referable. (Citations.)"

 Appellant claims that there was prejudicial misconduct in the opening statement of the prosecuting attorney wherein he recited facts which he knew he would not be able to support and that the facts that he presented to the jury were based on an extrajudicial statement made by codefendant Albright which the prosecuting attorney knew would not be admissible against appellant. While the statement of the prosecutor would have been improper if appellant were the only defendant, there was no reversible error here. The statements made by Albright were admissible against him and the court repeatedly instructed the jury that they were to receive the evidence of an admission made by one defendant not in the presence of the other defendant as evidence against the defendant making the statement only. (*People* v. *Matthew*, 194 Cal. 273, 279 [228 P. 424].)

 It is further claimed that it was prejudicial misconduct on the part of the district attorney when he asked a question which he knew to be improper. In this connection the record shows that when one of the officers was being questioned concerning his investigation. he was asked if he had questioned any of the suspects. After answering that he had, he was asked, "And who were those that were questioned, Officer Cox?" Officer Cox answered, "Questioned a man by the name of Henry Pilgrim, Paul Walker seated here with the checked shirt on, and a Guy Albright in the white shirt." The district attorney then asked, "As a matter of fact, Officer Cox, Mr. Pilgrim pled guilty?" and Officer Cox answered, "Yes." An objection was made and the court said:

"Let the record show that the jury has returned and the Court at this time will sustain the objection of Mr. Pearson made to the question which was asked immediately before the jury left this courtroom. It strikes the question from the record. It orders the jury to disregard totally the question which they heard. It admonishes the district attorney not to repeat any such question."

While the question was improper, there was no reversible

error under the circumstances. (*People* v. *Sourisseau,* 62 Cal. App.2d 917, 929 [145 P.2d 916].)

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 16, 1958.