[Crim. No. 1516. Fourth Dist. Feb. 24, 1960.]

THE PEOPLE, Respondent, v. WILLIE DANIEL BOWLES, Appellant.

318

Monroe & Chula, under appointment by the District Court of Appeal, George H. Chula, James C. Monroe and Dean G. Mitchell for Appellant.

Stanley Mosk, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

GRIFFIN, P. J.—Defendant was charged in an information with six counts of incest and statutory rape committed upon his minor daughter on three separate occasions. He pleaded not guilty as to all counts and, after a jury trial, was found guilty as charged. Defendant's motion for a new trial was granted as to four counts occurring on January 3, 1958, and July 3, 1958, and denied as to the other two counts. An appeal was taken from the judgment of conviction as to the two remaining counts which were for incest and statutory rape alleged to have occurred on July 6, 1958.

The prosecutrix testified that when she was about 10 years old she lived in Stockton with her father and stepmother and at that time her father, the defendant, asked her if she wanted to learn how to make money for new clothes. He told her that by acting as a prostitute she could get money the easy way. The defendant then had intercourse with his daughter and thereafter assisted her in the practice of prostitution and collected the money she thereby earned. This conduct continued for about two years. The defendant procured an abortion for the prosecutrix when she was 12 years old. Later defendant moved his daughter and her stepmother to Riverside County where they engaged in prostitution with the defendant's assistance. The prosecutrix then lived with other relatives in another state for a period of time but in 1957, when she was almost 16 years old, she returned to live with defendant in his home in Santa Ana. At that time defendant told her that he would not touch her again but about two months later, at his insistence, she submitted to him and there-

after defendant had sexual relations with his daughter about twice a week. She testified that she remembered having sexual intercourse with defendant on January 3, 1958, July 3, 1958 and July 6, 1958. In January 1958, the prosecutrix discovered that she was pregnant, and upon discovering this, defendant sent the stepmother to Stockton to locate an abortionist. In May or June 1958, defendant rented an apartment in Long Beach where his daughter lived for a time. He told the landlady there that they were ''Mr. and Mrs.'' and when the landlady asked if they had any children he replied, ''No, not yet.'' The defendant told the witness Woods, a neighbor in Long Beach, that the prosecutrix was his wife. During a brief visit to the apartment early one Sunday morning, this same neighbor observed defendant on the bed, partially dressed, while prosecutrix was wearing a nightgown. During the conversation with the neighbor, defendant lay down on the bed and kissed the prosecutrix.

Shortly before July 3, 1958, prosecutrix returned to defendant's home in Santa Ana where prosecutrix testified he had intercourse with her on July 3 and July 6. The incident on July 6 was preceded by defendant's drinking a considerable amount of liquor, after which he became angry and discharged a firearm in the kitchen while his daughter was standing nearby.

On the next day, after a conversation with a neighbor, the prosecutrix complained to the police. An investigation by the police disclosed that a bullet had passed through a table leg and into the kitchen wall.

The defendant testified that he had never had intercourse with his daughter or assisted his daughter in prostitution. He testified that he was at a card party on the evening of July 3, 1958. Defendant also stated that his daughter sometimes lied and was not a good girl as far as boys were concerned. A police officer stated in rebuttal that on July 10, 1958 defendant told him that his daughter didn't lie and that she was a good girl and stayed home. The prosecutrix' stepmother testified that she had never seen defendant in bed with his daughter and that she had never seen them having intercourse. She also testified that the prosecutrix was familiar with servicemen and older men and that the defendant objected to this conduct. The stepmother's testimony was impeached by testimony of a policewoman and former deputy district attorney who stated that on July 10, 1958, at the district attorney's office, the stepmother had stated that defendant had intercourse with prosecutrix in Stockton in

1954, and that since November 1957 the defendant had been having intercourse with the prosecutrix. The stepmother had also said at that time that on July 6, 1958, she had seen them in bed together. It also appeared that at the municipal court office on the same day the stepmother had signed a verified complaint charging defendant with these same offenses.

Defendant makes six assignments of error: (1) that the trial court erroneously admitted evidence that defendant placed his daughter in prostitution; (2) that evidence of acts of incest other than those charged should not have been received; (3) that the prosecution committed prejudicial misconduct in cross-examining the stepmother; (4) that the court gave erroneous instructions concerning election of offenses; (5) that the court erred in instructing the jury that the defendant was prosecuted in the interests of the People of the State of California and not in the interests of any person injured; and (6) that the evidence is insufficient to support the verdict.

In urging that the trial court erroneously admitted evidence that the defendant had assisted his daughter in acts of prostitution and received money earned thereby, defendant relies upon *People* v. *Benoit* (1893), 97 Cal. 249, 250 [31 P. 1128]. In that case the court held that evidence that a father received part of his daughter's earnings as a prostitute was entirely irrelevant at his trial for incest.

In *People* v. *Sykes,* 44 Cal.2d 166, 170 [280 P.2d 769], the general test as to the admissibility of evidence of other offenses in a criminal case were stated to be:

" '. . . does it tend logically, naturally, and by reasonable inference, to establish any fact material for the people, or to overcome any material matter sought to be proved by the defense? If it does, then it is admissible, whether it embraces the commission of another crime or does not, whether the other crime be similar in kind or not, whether it be part of a single design or not.' " (*People* v. *Peete*, 28 Cal.2d 306 [169 P.2d 924]; *People* v. *Moore*, 48 Cal.2d 541, 546 [310 P.2d 969].)

In *People* v. *Sykes, supra,* the defendant was charged with furnishing a minor with narcotics. Evidence that he had recruited the minor to commit acts of prostitution was held admissible as showing the motive for his gifts of narcotics to her. The dissenting opinion questioned the admissibility of the evidence of prostitution because there was insufficient evidence to show that the two ordinarily unrelated courses of

criminal conduct were part of a common scheme or plan. This would also appear to be the rationale of *People* v. *Benoit, supra.*

In the instant case the evidence clearly shows that, at its inception, defendant's incestuous conduct was a part of a scheme or plan to induce or recruit his daughter to engage in prostitution for defendant's profit. Evidence of defendant's assistance in prosecutrix' acts of prostitution was therefore admissible.

Defendant's contention that the evidence of acts of incest other than those charged was improperly received is similarly without merit. Defendant cites *People* v. *Smittcamp,* 70 Cal.App.2d 741 [161 P.2d 983], in support of his contention that the evidence should not have been admitted. That case holds that it is error to instruct the jury that evidence of other acts of sexual intercourse between the prosecutrix and defendant was admissible to prove greater probability of the commission of the offenses charged where the prosecutrix' testimony as to other acts was uncorroborated. Here the prosecutrix' testimony of prior acts of intercourse was corroborated by defendant's reference to prosecutrix as his wife and by the conduct observed by the witness Woods in the Long Beach apartment. This was sufficient corroboration to meet the requirement of the rule in the Smittcamp case. (See also *People* v. *Vertano,* 102 Cal.App.2d 627, 634 [228 P.2d 42] ; *People* v. *Patterson,* 102 Cal. 239 [36 P. 436].) Since prosecutrix was under the age of consent, she was incapable of being an accomplice and corroboration was not required as to her testimony regarding the offenses charged. (*People* v. *Hamilton,* 88 Cal.App.2d 398 [198 P.2d 907] ; *People* v. *Jahn,* 99 Cal.App.2d 236 [221 P.2d 333].)

The defendant contends that the district attorney committed prejudicial misconduct in cross-examining the stepmother. The defense called the stepmother as a witness and during her direct examination she testified as to hearsay which tended to show the prosecutrix was wont to falsely accuse men of molesting her. The stepmother also testified that prosecutrix went out with older men and that defendant objected to this conduct and tried to induce her to join a teenager's club. Her direct testimony contained denials that prosecutrix had undergone an abortion when she was 12 years old. On cross-examination, when questioned as to whether she, the stepmother, had acted as a prostitute, while living in Stockton and having prosecutrix in her custody, the step-

mother said she didn't know and then said she had been arrested for vagrancy. She denied that the prosecutrix acted as a prostitute in Stockton or Riverside County. She denied teaching prosecutrix how to act as a prostitute. The step-mother denied turning over her own earnings as a prostitute to defendant. On redirect-examination, she said that defendant did not know that she was acting as a prostitute at the time and that a man named "Johnny" was with her at this time; that defendant was arrested in Riverside County and that he pleaded guilty in order to avoid scandal involving the witness and the prosecutrix. On recross-examination, the witness said defendant had nothing to do with prostitution and that when he got out of jail he was angry with her. The district attorney then asked her if she knew that in December 1954 the defendant was arrested for deriving support from a prostitute. The court promptly sustained an objection to this question and the jury was instructed to disregard it.

In view of the evidence that defendant's initial incestuous conduct with the prosecutrix was part of a plan to induce her into a life of prostitution and that this was part of a larger plan whereby he similarly assisted the stepmother in her acts of prostitution, we cannot say that the cross-examination of the stepmother as to her own acts of prostitution was not relevant to the issues presented at the trial. The questions appear to have been preliminary to the questions as to whether or not the witness or the defendant induced the prosecutrix to act as a prostitute. In view of the other impeaching evidence offered by the prosecution, these questions could have had but little effect in further impeaching the stepmother's testimony. The defense on redirect first brought out that the defendant had been arrested and pleaded guilty in connection with acts of prostitution. The district attorney's question as to defendant's arrest could have added little, if any, additional to prejudice defendant in the eyes of the jury. Although the question should not have been asked, we are convinced that the prompt admonition of the court removed any prejudice to defendant which might have otherwise resulted. (*People* v. *Pearson*, 111 Cal.App.2d 9, 19 [244 P.2d 35] ; *People* v. *Webb*, 143 Cal.App.2d 402 [300 P.2d 130] ; *People* v. *Walker*, 160 Cal.App.2d 736, 741 [325 P.2d 594].)

Defendant next urges that the trial court erred in instructing the jury that ". . . the particular day on which (the) crime was committed need not necessarily be shown to have been the identical day mentioned in the Information,

provided that the same was committed any time within three years prior to the commencement of this action.'' Defendant contends that there was evidence of innumerable offenses at various times and that some of the jurors may have based their verdict on some of these acts and the other jurors on other acts. However, the instruction quoted above closed with the following words, ''In this connection you are cautioned that you may not find the defendant guilty by reason of evidence of an offense or offenses shown by the evidence other than those specifically charged in the information. To clarify, the defendant is only on trial for the specific offenses charged in the information, and for no others.'' The prosecution elected to rely upon the offense alleged to have taken place at approximately 8:30 p.m., July 6 as constituting the offenses charged in Counts III and VI. The court instructed the jury to this effect and then concluded with the words:

''It is your duty as jurors to determine by your verdict whether the defendant was guilty or not guilty of those alleged particular offenses, and, regardless of what your belief may be as to his innocence or guilt in connection with any other occasion shown by the evidence, you must not find him guilty of the charge made against him in said count or counts of the information unless you find that he committed that particular offense so elected by the prosecution as constituting the crime charged.''

The offenses charged in Counts III and VI were alleged to have occurred on the day the gun was fired, which the prosecutrix testified was July 6 and on the day before the prosecutrix complained to the police. A policewoman testified that the prosecutrix first came to the police on July 7. In view of the court's instructions and the lack of any conflict in the testimony that the date on which the offenses for which defendant was convicted occurred on July 6, we are convinced that the jury must have been certain that the charged acts occurred on July 6, 1958, and that the charges proved were identical with the acts charged. Since there was no conflict in the evidence as to the day when the acts of which the defendant stands convicted occurred, the jury could not have been confused by these instructions. (*People* v. *Hubbard,* 146 Cal.App.2d 124 [303 P.2d 359].)

Defendant also contends that the court committed error in instructing the jury that the prosecution was undertaken in the interests of the People of the State of California and not in the interests of the injured person. The instruction

states a truism of the law, and although we cannot see how it could have assisted the jury in its deliberations in the case, neither can we perceive how it could prejudice the defendant. The jury was given the cautionary instruction that charges of sex offenses are easy to make and hard to disprove and we are of the opinion that, in the light of all the instructions given, the jury was fully and fairly instructed upon the issues presented.

The contention is also made that the evidence is not sufficient to support the verdict of the jury. Although only slightly corroborated, and denied by the defendant, the testimony of the prosecutrix is not indefinite, uncertain, improbable or unbelievable, and she testified without evasion or contradiction. Without restating further the testimony in support of the offenses charged, we conclude that the evidence is sufficient to sustain the finding of the trial jury. (*People* v. *Vertano,* 102 Cal.App.2d 627, 634 [228 P.2d 42] ; *People* v. *Curtis,* 134 Cal.App.2d 624, 625 [286 P.2d 446].)

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.