[Crim. No. 4197.    Second Dist., Div. Three.    May 28, 1948.]

THE PEOPLE, Respondent, v. HOMER ELLSWORTH
NEAL, Appellant.

Gladys Towles Root for Appellant.

Fred N. Howser, Attorney General, and John F. Hassler, Deputy Attorney General, for Respondent.

WOOD, J.—Defendant was convicted in a jury trial of violation of section 288 of the Penal Code, and he appeals from the judgment.

Appellant's contention that the evidence was insufficient to support the judgment is not sustainable. The alleged victim, a girl 11 years of age, testified that on April 27, 1947, about 11 a. m., she went with defendant, at his invitation, into an underground pumping station to see the pumps; that while they were in the station he carried her, with his arm around her waist, to a place "to stand on" where she could see the pumps; that he ran his hands up and down her legs and under her pants; that when they were about to

leave he told her not to tell her mother about anything that happened; that he gave her 50 cents; and that when she arrived home she told her mother what had happened. Her mother testified that on the day mentioned the girl went away from home about 11 a. m. and returned about 1 p. m.; and that when she returned she told the witness "about something happening to her." A deputy sheriff testified that, in a conversation with defendant the next day, the defendant said that he and the girl had gone down into the pumping station, and that he had showed her around; that the only time he had his hands on her was when he picked her up to place her on a pump and that when he was lifting her he had one hand under her buttocks and the other hand over her breast; and that he had given her 25 cents.

Defendant testified that he permitted the girl to go into the station because he was trying to build up the good will of the children in the neighborhood and in a near-by school so that they would not throw any more refuse against the door of the station; that he had taken groups of children in there; that after he permitted children to see the station he had very little trouble "with stuff being put on the door or any bottles broken and thrown in"; that he did not touch the girl except when he picked her up, at her request, and put her on top of a covered pump, about 32 inches above the floor, where she could see the stopping and starting of the three automatic pumps; that he picked her up "kind of on her arm and just set her over"; and that he gave her 25 cents. Eighteen persons, called as character witnesses by defendant, testified in substance that defendant's reputation for truth, morality, and chastity was good. These witnesses included two ministers, the president of the Lakewood Public Utility District where the defendant was employed, the general manager, the attorney, a director, and an employee of the district, the editor of the community newspaper, an engineer, an employee of a city college, and eight neighbors. The evidence was legally sufficient to support the judgment.

Appellant's further contention that the deputy district attorney was guilty of prejudicial misconduct is sustained. After the first character witness (one of the ministers) had testified that defendant's reputation, in the respects above mentioned, was good, the prosecutor asked him: "Did you know that on October 18, 1939, Mr. Neal pleaded guilty to one count of rape?" Defendant objected to the question, and the prosecutor withdrew it, and then asked the witness

as follows: "Did you know that on October 18, 1939, Mr. Neal pleaded guilty to one count of rape in Department A of the Superior Court of Long Beach; on November 6, 1939, the plea of guilty to that count was withdrawn; on December 14, 1939, Mr. Neal pleaded guilty to two counts of contributing to the delinquency of a minor, a misdemeanor; and on March 11, 1940, he was sentenced to one year in the County Jail concurrently on each of those counts; sentence suspended and placed on probation for two years; sentenced to the City Jail of Long Beach 24 hours out of each week for a period of eight months?" Then counsel for defendant said: "I object to that and make a motion to strike on the grounds it is incompetent, irrelevant and immaterial and not proper cross-examination." Then the following occurred: "The Court: I think it is cross-examination in regard to his opinion, isn't it? Mr. Boland [counsel for defendant]: No, your Honor. The Court: You may answer the question whether you knew that or not. The Witness: I have no knowledge concerning these things. Q. By Mr. Tobey [prosecutor]: Had you known that would that make any difference in your opinion that his reputation for chastity and morality is good? A. I don't know anything about those things. The question is—I don't know, are you presenting those as established facts? Q. I have here the records of the Superior Court, Superior Court information No. 77479, and I would like to introduce this in evidence as People's Exhibit A. Mr. Boland: I object to that, if your Honor please, on the ground that it is merely a record of a conviction of a misdemeanor, which is not proper in this case to bring before the Court. The Court: Objection sustained. I don't think it is admissible. Mr. Tobey: It is not offered for the proof of any previous charge, nor is it offered in any respect other than to establish reputation as to chastity and morality. The Court: Read the last question. (Question read by the reporter.) The Court: You may answer that. The Witness: I think not in view of the contacts that I have had with him."

After the general manager of the utility district had testified that the reputation of the defendant, in the respects above mentioned, was good, the prosecutor asked him: "Did you know that on December 14, 1939, Mr. Neal pleaded guilty to two counts of contributing to the delinquency of a minor?" The witness answered, "No." Then counsel for defendant said: "I object to that and make a motion to strike that as not proper cross-examination. The time covered by the direct

examination was within the last two years." The court said: "When was this period?" Counsel for defendant said, "1939." The court said: "Objection sustained. The answer may be stricken."

After the director of the district had testified that the reputation of the defendant was good, the prosecutor asked him: "Did you know of his plea of guilty to a charge of contributing on December 14, 1939?" Then the following occurred: "Mr. Boland [counsel for defendant]: If your Honor please, I object on the ground that the direct examination was confined to a period of since 1940. The Court: Objection sustained. Mr. Boland: And I will ask the Court to instruct the jury to disregard the question. The Court: The jury is instructed to disregard that particular question. Q. By Mr. Tobey [prosecutor]: Did you know that on March 11, 1940, Mr. Neal was sentenced to one year in the County Jail on two counts of contributing? Mr. Boland: If your Honor please, I object to the introduction of any of that line of testimony on the ground it is incompetent, irrelevant and immaterial and not proper cross-examination. The Court: Objection sustained."

After the employee of the city college had testified that the reputation of defendant was good, the prosecutor asked her: "Did you know of his having been sentenced to the City Jail of Long Beach on March 11, 1940?" Defendant's counsel objected to the question upon the ground that it was not proper cross-examination, and that it was incompetent, irrelevant and immaterial. The objection was sustained.

It was prejudicial misconduct on the part of the prosecutor to ask a character witness if he *knew* that defendant had pleaded guilty to a charge of rape or to charges of contributing to the delinquency of a minor, or that he had been sentenced to the county jail or to a city jail, and to include in the question the alleged details as to the certain department of a certain court where the defendant allegedly pleaded guilty to rape, and to include the alleged details as to the withdrawal of that plea on a certain day and pleading guilty to contributing to delinquency on another certain day, and to include the alleged details as to the sentence and the terms of probation. (See *People* v. *McDaniel*, 59 Cal.App.2d 672, 675-677 [140 P.2d 88].) ■ The court erred prejudicially in overruling the objection to that question, and in directing the witness to answer it. The asking of that question was de-

signed to advise the jury indirectly, under the guise of cross-examination, concerning a matter which the prosecutor could not have presented directly, namely, that it was a fact that defendant had been convicted previously. That the question had the effect, which it was calculated it would have upon hearers, is indicated by the question which the witness thereupon asked the prosecutor, namely, ". . . are you presenting those as established facts?" █ It was also prejudicial misconduct for the prosecutor, in response to that question by the witness or for any reason at all, to announce that he had with him the records of the superior court, an information bearing a particular number, and that he would like to introduce that record in evidence.

The prejudicial misconduct of the prosecutor which occurred during the cross-examination of the first character witness was aggavated by his repeating parts of that prior question while cross-examining three other character witnesses. As above shown, he asked subsequent questions as follows: (1) He asked one of the other witnesses if he *knew* that defendant had pleaded guilty to contributing to the delinquency of a minor; (2) he asked another if he *knew* that defendant had pleaded guilty to contributing, and had been sentenced to the county jail; and (3) he asked another if she *knew* that he had been sentenced to the city jail of Long Beach. In addition to emphasizing the prior misconduct of the prosecutor, those subsequent questions, by reason of the variations therein as to the location of the jail to which defendant was sentenced, tended to create the impression that he had been sentenced to two different jails because he had been convicted in two different prior cases.

█ Respondent asserts that the error, if any, in asking the character witnesses if they *knew* that he had been convicted, instead of asking if they had heard reports that he had been convicted, was harmless error for the reason that the witnesses answered in the negative. The alleged point of that assertion seems to be that since they answered they did not know of the conviction there was no implication that defendant had been convicted. The question of the prosecutor, which included many alleged details concerning a conviction, and his offer of the record in evidence, were tantamount to a declaration by the prosecutor that it was an established fact that defendant had been convicted. The negative answers of the witnesses did not render the errors harmless. █ Respondent asserts also that those questions were asked in good

faith. After the court had sustained the defendant's objection to the question as to whether a witness *knew* of the prior conviction, the prosecutor asked three similar questions, and objections thereto were sustained. In view of the repeated asking of such question under those circumstances, it cannot be concluded that the prosecutor asked the questions in good faith.

It has been said, in referring to cases of this kind, that "No charge can be more easily made, and none more difficult to disprove." (See *People* v. *Adams,* 14 Cal.2d 154, 164 [93 P.2d 146].) It was also said in that case, at pages 167-8, that ordinarily upon a charge of this nature the only defense available to the accused is his own denial together with evidence of former good reputation, and that by reason of the ease with which convictions may be secured "in cases of the instant kind that courts are at pains to insist upon fair trials in all respects being accorded to the accused." The evidence herein consisted principally of the uncorroborated statements of the alleged victim and the denial by the defendant. The testimony of the character witnesses on direct examination was limited to defendant's general reputation in the community for truth and morality. That general reputation was, of course, the estimation in which the defendant was held in the community as to those traits of character, and was not merely what the character witnesses thought of him. (See *People* v. *Long,* 63 Cal.App.2d 679, 684 [147 P.2d 659].) The cross-examination should have been restricted to questions which would test the sufficiency of the foundation for the direct testimony, and should not have been extended to include inquiries as to what the witnesses might think defendant's general reputation in the community would be, or what the witnesses individually might think of him, if they had additional information. The misconduct of the district attorney in the present case was a flagrant abuse of such limited privilege of cross-examination of the character witnesses. Unless such misconduct in the cross-examination of character witnesses is discontinued it may become necessary to place further limitations upon cross-examination of such witnesses.

The judgment is reversed and the cause is remanded for a new trial.

Shinn, Acting P. J., and McComb, J., assigned, concurred.