[Crim. No. 3243.   First Dist., Div. One.   Feb. 27, 1957.]

THE PEOPLE, Respondent, v. FLULCHER GRIMES, Appellant.

Richard M. Frisk, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, John S. McInerny, Deputy District Attorney, and J. F. Coakley, District Attorney (Alameda), and Zook Sutton, Deputy District Attorney, for Respondent.

WOOD (Fred B.), J.—Charged with violations of sections 288 and 288a of the Penal Code defendant was found guilty of the latter, not guilty of the former. He assigns a number of errors of law in support of his appeal.

(1) *Was the asking of certain questions of defendant's character witnesses prejudicial misconduct on the part of the prosecutor?*

Three of defendant's witnesses testified that his reputation for chastity, virtue and morality is good.

Upon cross-examination, defendant's first character witness was asked the following questions: (1) Have you heard that he [defendant] was arrested with a sailor on June 3d this year and was seen by officers going into the bushes at 2:30 in the morning at Aquatic Park, have you heard that? (2) And did you also hear, that when they came out of the bushes that the sailor, the young sailor and the defendant they went into the defendant's car and sat there for several hours, had you heard that? (3) Now, did you also hear, that when the defendant was arrested he was with this sailor and the sailor's pants were unzipped, did you hear that? (4) And did you also hear that the sailor told the police officers that he was propositioning him for a blow job, did you hear that?

Each of the other two character witnesses was asked sub-

stantially the same questions, in the same order. Each of the three answered ''No'' to each of the four questions.

The only objection which defendant's counsel* interposed was that the questions did not touch upon the trait of character here involved. In the case of the first witness, he made this objection to questions (1) and (2), not to (3) or (4); in the case of the second witness, he objected only to questions (1), (2) and (3), not to (4); in the case of the fourth witness, he interposed this objection to each of the four questions.

We think the objection was not good. Each question appears to have a bearing upon one of the traits involved.

The vice of this line of questioning was that of going into the details of the hypothetical report concerning defendant and the sailor and of continuing with further questions on the subject, with each witness, after getting a negative answer to the first question, thus improperly bringing such matters to the jury's attention, with emphasis by repetition. (See *People* v. *Burwell*, 44 Cal.2d 16, 35 [279 P.2d 744], [what is proper cross-examination in the absence of a showing of bad faith]; *People* v. *Gin Shue*, 58 Cal.App.2d 625, 634 [137 P.2d 742], [the ''prosecution is confined to the answer given by the witness, and can inquire no further into the matter'']; *People* v. *Neal*, 85 Cal.App.2d 765, 769-771 [194 P.2d 57], [improper ''to include in the question the alleged details.''].) No objection on these grounds was made. Nor did defendant's counsel, at the trial, object that these questions were asked in bad faith and without a factual basis. (See *People* v. *White*, 43 Cal.2d 740, 744 [278 P.2d 9], [challenge as to prosecutor's good faith and asserted lack of factual basis for the questions; heard and determined outside the presence of the jury].)

Defendant's present counsel urges that the deputy prosecutor's persistent and detailed interrogation of these character witnesses was so flagrant a flaunting of long established principles of the law as to constitute prejudicial misconduct despite the failure of defendant's then counsel to interpose appropriate objections. That is a point which appears to have great merit. ■ ''The failure to make a timely and sufficient objection is of no moment where a grave matter of public policy is involved. Counsel for the defense do not bear the entire burden of protecting the constitutional rights

---

*He is represented by different counsel upon this appeal.

of their client.'' (*People* v. *Rodriguez*, 58 Cal.App.2d 415, 421 [136 P.2d 626]. See also *People* v. *Asavis*, 22 Cal.App.2d 492, 499-500 [71 P.2d 307].) However, it is not necessary to decide this question in view of our conclusion that upon other grounds, presently to be discussed, the judgment must be reversed. We are confident that upon a new trial, if one is had, the prosecution will not again go beyond the limits prescribed by law for the interrogation of character witnesses.

(2) *Did the court err in not informing the jury of the limited function of the questions which the prosecutor put to defendant's character witnesses?*

We refer to the four questions, above discussed, which the prosecutor asked of each of defendant's three character witnesses.

Defendant's counsel failed to request an instruction on this subject. Was the court under a duty to give such an instruction in the absence of a request therefor? We think so, under the circumstances of this case.

In a criminal case, ''the trial judge is required to instruct the jury of his own motion upon the law relating to the facts of the case and upon matters vital to a proper consideration of the evidence. (*People* v. *Putnam*, 20 Cal.2d 885, 890 [129 P.2d 367] ; see also *People* v. *Bender*, 27 Cal.2d 164, 176 [163 P.2d 8] ; *People* v. *Warren*, 16 Cal.2d 103, 116 [104 P.2d 1024] ; *People* v. *Scofield*, 203 Cal. 703, 709 [265 P. 914].)'' (*People* v. *Buffum*, 40 Cal.2d 709, 724 [256 P.2d 317].)

In *People* v. *Bentley*, 131 Cal.App.2d 687 [281 P.2d 1] this principle was specifically applied to the need of a jury for advice as to the limited purpose and use of questions put to a character witness concerning reports of other offenses or of misconduct inconsistent with the possession of a good reputation: ''. . . it is highly important that the jurors understand that the purpose of the inquiry is merely to test the worth of the opinions the witnesses have expressed as to the reputation of the accused. Such questioning by the prosecutor carries an implication that such rumors have been in existence and would naturally cause the accused to be suspect of grievous wrongdoing or perhaps of other crimes. It is necessary that the jurors should put out of their minds all questions as to the truth of the rumors or charges, and yet they cannot know the limited purpose of the cross-examination unless it is explained to them.

''The defendant did not request such an instruction and

none was given. One should have been given of the court's own motion. It was especially necessary because of the course of the trial after defendant had denied the accusations with relation to other children but we think a cautionary instruction should be given in every case in which such cross-examination is permitted.'' (Pp. 691-692.)*

The need for such an instruction in the instant case was more than usually compelling, especially because of the improperly repetitive and detailed nature of the questions; emphasized by one of the instructions on evidence corroborative of an accomplice's testimony, an instruction which came very close to telling the jury they might consider as evidence in the case the reports of misconduct suggested by these questions.

(3) *Were the instructions upon corroboration of the testimony of an accomplice misleading?*

In respect to the count which charged a violation of section 288a of the Penal Code, the jury was given the question whether the prosecuting witness was an accomplice, as well as the question whether the defendant was guilty or innocent of the crime charged.

Concerning the need for evidence corroborating the testimony of an accomplice, the jury was instructed in the terms of CALJIC Number 822 as it appears in the permanent volume of that work, supplemented by the paragraph which appears on page 200 of the 1953 Pocket Supplement. The latter reads as follows, as given in this case: ''The corroborating evidence required by the law may be circumstantial as well as direct, and the entire conduct of the accused, himself, both as a witness in his own behalf and at times other than at the trial as shown by the evidence, along with all other evidence in the case may be looked to for corroborative circumstances.''

This quoted paragraph, in the absence of advice concerning the limited purpose of the questions asked concerning reports of the conduct of defendant and the sailor, well could have misled the jury to believe that the facts seemingly implied by those questions could be considered by the jury in determining the guilt of the accused.

---

*Respondent invokes *People* v. *White, supra*, 43 Cal.2d 740, on this point. But the court in that case did not hold it was proper for the trial court not to instruct on this subject. Instead, it said: ''Under the circumstances defendant would appear to have suffered no prejudice.'' (P. 745.)

The references to "circumstantial" evidence, the "entire conduct" of the accused on the witness stand and at other times than at the trial, "along with all other evidence in the case" (in the absence of an instruction as to the limited evidentiary value of the questions asked of the character witnesses) well could lead a layman to believe that the "reported" conduct of defendant and the sailor was evidence in the case, to be weighed with the rest of the evidence in determining the guilt or innocence of the defendant.

The People say that this instruction was a correct statement of the law, a standard instruction, and "obviously directed toward the appellant's testimony in his own behalf, his demeanor as a witness, and the inconsistent statements he had given the police at the time of his arrest." It was not "obviously" thus limited in scope, purpose and application, as we have seen. Moreover, if the "demeanor" of the defendant as a witness is sufficient corroboration, the corroboration requirement could hardly ever fail to be satisfied.

We should not forget that corroborating evidence must do more than raise a suspicion of guilt. It must in some degree implicate the defendant and, to be sufficient the "evidence 'must relate to some act or fact which is an element of the offense.' " (*People* v. *Santo,* 43 Cal.2d 319, 327 [273 P.2d 249].)

The conduct of the defendant as indicated by the evidence in this case revealed only that the defendant had meetings and conversations with the prosecuting witness. It did not reveal, for example, any contradictory statements by the defendant that would have any significant bearing upon corroboration, as we read the record.

We note in passing that the instruction under discussion was formulated in response to a statement appearing in *People* v. *Brickman,* 119 Cal.App.2d 253 [259 P.2d 917]. (See editorial note in CALJIC, 1953 Pocket Supplement, p. 200.) The Brickman case involved a violation of the narcotics law, possession of marijuana. The defendant said to the officers, " 'What will I get,' " then denied that the " 'stuff' " was his, and later said to a cosuspect " 'I am sorry . . . It is all my fault. I did it. I am responsible for the whole thing . . . It is all my stuff . . .' " (Pp. 256 and 257 of 119 Cal.App.2d), to mention a few of his out-of-court statements. Concerning their value as corroboration, the court said: "The above mentioned extrajudicial declarations of appellant, tending as they did to connect him with

the commission of the crime charged, constituted sufficient corroboration to sustain the conviction," assuming but not deciding that certain witnesses were accomplices. (P. 262.)

Later on in the opinion, discussing the sufficiency of the evidence to support the judgment, the court among other things said: "In the case now before us, the record reflects that appellant admitted to the police officers that he had purchased the marijuana, that he had planned to resell it, and that he had placed it in Castle's trousers because there was no other place to hide it. He also stated that the reason the marijuana was still in the house was that 'it wasn't moving very fast.'

"When these statements are considered with other evidence in the case, and looking at all the evidence in a light most favorable to the prosecution, as we must do on appeal in a criminal case (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Kristy*, 111 Cal.App.2d 695, 698 [245 P.2d 547]) the conclusion seems inevitable that appellant had possession of the marijuana and that such possession had not been abandoned." (P. 263.)

We observe that there the court was applying the law to the particular facts of that case, by no means undertaking to write an instruction for general use. The instructions given and refused were not in the record upon that appeal and accordingly were not considered. Their correctness was assumed.

However, we are not especially concerned with the correctness of the instructions on corroborative evidence in relation to the purpose for which they were given. The jury found that the prosecuting witness was not an accomplice and the defendant does not challenge that finding.

We are concerned with the portion of those instructions which we have quoted and its impact upon the jury in respect to other aspects of the case and the likelihood of its misleading them to make an improper use of the suggestions given them by the series of questions which the prosecutor put to defendant's character witnesses. (See *People* v. *Rogers*, 22 Cal.2d 787, 806-807 [141 P.2d 722], and *People* v. *Smittcamp*, 70 Cal.App.2d 741, 745-749 [161 P.2d 983].)

The combined effect of this instruction and the failure to advise the jury of the limited scope of those questions as evidence is such that we cannot say that but for these a different verdict would have been improbable.

(4) *Was it error for the trial court to permit the prosecu-*

*tion to amend the information by adding a charge under section 288 of the Penal Code?*

■ The original information charged only a violation of section 288a of the code.

The amendment was made on the first day of the trial, but two weeks prior thereto the prosecutor had orally informed defendant's counsel of his intention to amend. Both counts involved the same transaction and the same proof, the difference being that section 288a involved the accomplice question and section 288 did not.

Allowance of such an amendment has ample legal sanction. (*People* v. *Evans*, 39 Cal.2d 242, 249 [246 P.2d 636] ; *Parks* v. *Superior Court*, 38 Cal.2d 609, 611-613 [241 P.2d 521].) Nor was there any abuse of discretion under the circumstances of this case.

The judgment and the order denying a new trial are reversed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied March 29, 1957, and respondent's petition for a hearing by the Supreme Court was denied April 25, 1957. Gibson, C. J., Shenk, J., and Spence, J., were of the opinion that the petition should be granted.