[Crim. No. 1187.    Fourth Dist.    Oct. 27, 1958.]

THE PEOPLE, Respondent, v. ZACK THOMAS, JR., Appellant.

Simmons & Simmons for Appellant.

Edmund G. Brown, Attorney General, and Arthur L. Martin, Deputy Attorney General, for Respondent.

COUGHLIN, J. pro tem.*—The defendant was charged with the violation of section 261 of the Penal Code, i.e., attempt to commit rape; was tried by a jury and found guilty; a motion for a new trial was made and denied; judgment of

---

*Assigned by Chairman of Judicial Council.

imprisonment in the state prison ensued; and he takes this appeal from the judgment and "from the denial of the motion for new trial."

On the night of June 10, 1957, at about 11:30 o'clock, the defendant and a companion named Howard, while driving home from a restaurant, stopped at an automobile parked near the corner of Broadway and 14th Street in the city of Blythe. In the parked car was a Mrs. Ethel Fielder and her baby. In reply to an inquiry from the two men as to why she was there, Mrs. Fielder told them she was waiting for her husband; that he would be along in a little while; and that they had better leave. The defendant and Howard left; went to the home of an uncle; and then decided to return to the parked automobile. In the interim the defendant had said to his companion, "Oh, man, we ought to go on and make it"—— "we ought to go back and try to make this girl"—— "there couldn't nobody know about it no way, because all the watermelon boys are here." Howard replied that he was scared to do this, but, upon assurance from the defendant, went along.

Mrs. Fielder had been fixing a bottle for her baby, who was asleep in the back seat, and remained in the automobile at the place where the two men previously had seen her; they walked back and asked her to take them home; she refused and attempted to start her car but it stalled; the defendant pulled the car door open and told her to move over; she protested, telling him to leave, and began blowing the car horn. Thereupon the defendant jerked at her; hit her in the face; pushed her to the side; moved in; "broke the horn in two"; and directed Howard to drive off.

As Howard drove, the defendant slapped Mrs. Fielder; started "fiddling" with her; tried to get into the top of her dress; tried to pull up her dress; got his hand up her dress; and grabbed her when she attempted to get out of the car.

Eventually the automobile was stopped at a place about six miles from where they had started and Howard got out. Then the defendant tried to kiss Mrs. Fielder and tried to push her down in the seat. She struggled to keep him from pushing her down in the seat; grabbing hold of the steering wheel, and the defendant started "socking" her, and continued "socking" her until she was "half unconscious." At this time Howard returned; insisted that they leave, as he had to go to work the next morning; got into the car; and they left.

On the way back the defendant continued to "sock" Mrs.

Fielder; pulled up her dress; pulled on her leg; and tried to get on top of her. She was in a hysterical condition.

After reaching town the car stalled. Howard got out, and after some urging prevailed upon the defendant to accompany him to get some gasoline, believing that a lack of gasoline was the cause of the engine failure. After they left Mrs. Fielder attempted to and did get the car started; drove home; and immediately reported the incident to her landlord who called the sheriff. She had marks on her body and "discolorations or abrasions" in the area of her neck and the side of her leg.

Mrs. Fielder did not testify in the trial court. It appearing that she could not be located, her testimony given at the preliminary hearing was read into evidence.

The defendant contends that the evidence is insufficient to convict him of the offense with which he was charged, and that the trial court abused its discretion in admitting into evidence the testimony of Mrs. Fielder which was taken at the preliminary hearing.

The crime of attempted rape "is complete if there is a concurrence of the intent to commit such crime with a direct, although ineffectual, act towards its commission," (*People* v. *Van Buskirk*, 113 Cal.App.2d 789, 792 [249 P.2d 49]) providing the efforts of the accused "reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation." (*People* v. *Miller*, 2 Cal.2d 527, 530 [42 P.2d 308]; *People* v. *Fratianno*, 132 Cal. App.2d 610, 627 [282 P.2d 1002].) To constitute such an attempt it is not necessary "that the act done should be the last proximate one for the completion of the offense," (*People* v. *Fiegelman*, 33 Cal.App.2d 100, 105 [91 P.2d 156]), or that there be any penetration whatever. (*People* v. *Esposti*, 82 Cal.App.2d 76, 78 [185 P.2d 866].)

The defendant argues that the evidence does not prove that he attempted to have sexual intercourse with Mrs. Fielder, but only that he "slapped" and "fondled" her.

The evidence establishes facts which justify an inference that the defendant intended to commit rape. "Whenever the design of a person to commit a crime is clearly shown, slight acts done in furtherance of that design will constitute an attempt" (*People* v. *Fiegelman*, 33 Cal.App.2d 100, 105 [91 P.2d 156]; *People* v. *Fratianno*, 132 Cal.App.2d 610, 628 [282 P.2d 1002].) The acts of the defendant were far in excess of "slight." To describe his conduct as "slapping" and "fondling" is most incomplete, inadequate and

restrained. The record fully supports the conclusion that his advances, mistreatment, struggle to get Mrs. Fielder down in the seat, and other misconduct would have resulted in his having sexual intercourse with her had it not been for her resistence and the timely interruption by Howard.

■ The defendant claims that the evidence is insufficient because there was no showing that he had the ability to engage in sexual intercourse. This contention is without merit. Want of such ability is a matter of defense (*People* v. *Wessel,* 98 Cal. 352 [33 P. 216]). Moreover, the evidence establishes that he believed he had the ability; this belief must have been founded on his knowledge as to the fact of his ability. In addition, although testifying he made no statement respecting any such disability. (See *People* v. *Osaki,* 209 Cal. 169, 176 [286 P. 1025]; *People* v. *Hassen,* 144 Cal.App.2d 334, 343 [301 P.2d 80].)

■ The defendant further contends that the trial court abused its discretion in determining that Mrs. Fielder could not "with due diligence be found within the state" (Pen. Code, § 686, subd. 3), and in permitting the deposition of her testimony taken at the preliminary hearing to be read into evidence, pursuant to the provisions of section 686, subdivision 3 of the Penal Code. It is urged that the finding of the court respecting the exercise of due diligence was based on hearsay statements admitted over objection, and for this reason was erroneous. The deputy district attorney representing the plaintiff testified that on August 19, 1957, he had been notified by the sheriff's office that Mrs. Fielder had moved to 2032 North Ivar Street in Hollywood; that he was told the name and address of an attorney representing her, whom he called and was advised that the attorney also was trying to locate her, but that a letter written to the Hollywood address had been returned; that on October 14, 1957, the sheriff's office advised him that Mrs. Fielder was now living at 1516 First Avenue, Oakland, whereupon he caused a subpoena to be issued and forwarded to the sheriff's office in Oakland which returned it with a certificate of inability to locate the witness; that on December 9, 1957, he was advised by the sheriff's office that the Fielders might be living in Eagle Mountain, whereupon he caused a subpoena to be issued and placed with the sheriff for service and thereafter received a return with a certification that the witness could not be found at Eagle Mountain.

A deputy sheriff testified that on August 19, 1957, he received a subpoena to be served on Mrs. Fielder in Blythe; that he had her address and when he went there he found a young couple who told him that she no longer lived at this address and that they did not know of her whereabouts; that he contacted a police officer who, he was informed, was Mrs. Fielder's nephew, and upon inquiry respecting her whereabouts was told that she lived in Hollywood at the address heretofore noted, which information he gave to the district attorney; that on October 9, 1957, after receiving another subpoena for the witness, he went to an address on South Broadway, in Blythe, to which he had been directed, and upon finding no one at that place inquired of a neighbor who informed him that Mrs. Fielder had moved; that later he received some papers in a civil action from Reno, Nevada, in which Mrs. Fielder was the plaintiff and Mr. Fielder was the defendant, which had been sent him for service. On cross-examination the deputy sheriff testified that he attempted to serve a subpoena on Mrs. Fielder at different times between August 19 and August 30, attempted to contact her numerous times, with negative results; that the power company told him that Mrs. Fielder might be at Eagle Mountain and he sent this information to the district attorney's office.

██ ''The question of what constitutes due diligence to secure the presence of a witness which will authorize the reading to the jury of testimony taken at the preliminary hearing of the case, is largely within the discretion of the trial court, and depends upon the facts of each particular case. ██ The decision of a trial judge on the question of diligence and of the propriety of receiving or rejecting the evidence will not be disturbed on appeal unless it appears that there was an abuse of discretion. (Citing cases.) The problem is primarily for the trial court, and its solution will not be disturbed if there is evidence of substantial character to support its conclusion. (Citing cases.)'' (*People* v. *Cavazos*, 25 Cal.2d 198, 200-201 [153 P.2d 177].)

██ The evidence in this case on the issue in question was substantial. Testimony relating statements made by third parties, in response to inquiries concerning the whereabouts of an absent witness, are admissible to show what effort has been made to locate the witness; what inquiries have been made; what replies have been received in response to such inquiries; and what further investigation has been conducted as a result of such replies. This is direct testimony, not hear-

say. Such statements are admitted to prove that the statements have been made; not to prove that the facts therein related are true. The propriety of this type of testimony, to establish the exercise of due diligence, has been approved by affirmance of the trial courts' decisions based thereon in *People* v. *Dunn,* 29 Cal.2d 654, 660 [177 P.2d 553] ; *People* v. *Cavazos,* 25 Cal.2d 198, 200 [153 P.2d 177] ; *People* v. *Lewandowski,* 143 Cal. 574, 576 [77 P. 467] ; *People* v. *McDaniel,* 157 Cal.App.2d 492, 498 [321 P.2d 497] ; *People* v. *Gardner,* 128 Cal.App.2d 1, 5 [274 P.2d 908] ; *People* v. *Williams,* 123 Cal.App.2d 226, 229 [266 P.2d 599] ; *People* v. *Harris,* 16 Cal.App.2d 701 [61 P.2d 348] ; and *People* v. *Noone,* 132 Cal. App. 89, 92 [22 P.2d 284].　There was no abuse of discretion in the case at bar.

The judgment and order denying defendant's motion for a new trial are affirmed.

Griffin, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied November 18, 1958.