[Crim. No. 7022. In Bank. June 4, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. HARVEY
ROBERT DOWNER, Defendant and Appellant.

William P. Callahan and Kenneth G. Wilshire for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and John F. Foran, Deputy Attorney General, for Plaintiff and Respondent.

McCOMB, J.—Defendant appeals from a judgment of guilty of the crime of attempted incest, after trial before a jury.

Viewed in the light most favorable to the People, the record discloses the following facts.

Defendant, his daughter, and his son lived in a two-bedroom trailer house outside of Lewiston, Trinity County, California. The trailer was composed of one back bedroom separated from another bedroom by a bathroom. The second bedroom contained two bunk beds, the lower of which was occupied by defendant and the upper by his son; defendant's daughter, Bonita, occupied the back bedroom.

December 5, 1959, about 10 p. m., defendant went into his daughter's bedroom after she had retired. He sat on her bed, awakened her, and said he wanted to talk with her. She knew the reason he was there, for he had been coming into her bedroom for the same purpose since 1957. At the time he entered the bedroom he was wearing only his underwear. She struggled against the advances of her father for about two hours, that is, for the entire time he was in her room. During the struggle he removed the bottom of her pajamas, tearing them as he did so. He then removed his underwear, got on top of her, and said that he "wanted some relief." He had been perpetrating these acts upon his daughter since 1957 and had always used the same words to the effect that he "wanted relief." He struck his daughter several times with a knife and threatened her if she did not lie still.

After defendant assumed his position on her, there was physical contact between his penis and the girl's vaginal area. He put his penis, which she described as "more or less hard," in only part of the way, to the extent of about an inch or an inch and a half, and made motions to some extent during the period of this contact.

Gary Downer, defendant's 16-year-old son, who slept in

the bunk bed in the other bedroom, had observed his father go into his sister's bedroom and about 15 minutes later heard her begin crying and moaning. This continued for about 45 minutes to an hour. He also heard parts of conversations between his father and his sister, in which the girl said, "No, no," "Who do you think you are," "You think you are a privileged character," "You know it's wrong," and remarks of a similar nature.

On December 16, 1959, defendant again entered his daughter's bedroom after she had gone to bed. She knew what he wanted and struggled against his advances. Defendant stated that he "just wanted to get some relief." He was again wearing only his underwear, and the girl had retired wearing a pair of pants and a blouse. Defendant tore off her pants and blouse during the struggle in which she tried to resist his advances. During the struggle she suffered a bloody nose, and defendant twisted her arms. A pillowcase and sheet stained with blood from the girl's nose were recovered from the trailer on December 17. On the night of the 16th defendant did not accomplish any type of sexual contact with his daughter, but he did make an effort to do so. He finally became angry and left.

On this same evening the son again observed his father go into the girl's bedroom, and about 15 minutes later heard her crying and moaning. He heard this crying and moaning continue for 45 minutes to an hour. He also stated that activities of the type that took place on the 5th and 16th had gone on since about a month after he had moved in with his father and sister.

Defendant had perpetrated on his daughter acts similar to those that occurred on December 5 about once a month or once every two months since she had come to live with him. There was evidence of a conversation on December 5 between defendant and his daughter in which he told her that if she did not lie still he would put it "clear in," and on certain occasions he had threatened to stick her with a knife if she did not lie still.

Defendant contends: First. *That the evidence is insufficient to support his conviction of attempted incest.*

This contention is devoid of merit. These rules are here applicable:

 (1) The crime of attempted incest is complete if the evidence is sufficient to show the concurrence of (a) the intent to commit such a crime, together with (b) direct, though in-

effectual, acts done toward its commission. (*Cf. People* v. *Camodeca,* 52 Cal.2d 142, 145 [1] [338 P.2d 903]; *People* v. *Gallardo,* 41 Cal.2d 57, 66 [12] [257 P.2d 29]; *People* v. *Thomas,* 164 Cal.App.2d 571, 574 [1] [331 P.2d 82].)

(2) To constitute attempted incest, the defendant's conduct must go beyond mere preparation and must reach far enough toward accomplishment of the desired result to amount to commencement of the consummation. (*Cf. People* v. *Franquelin,* 109 Cal.App.2d 777, 784 [5] [241 P.2d 651].)

(3) Whenever the design of a person to commit a crime is clearly shown, slight acts done in furtherance thereof will constitute an attempt. (*People* v. *Thomas, supra,* at p. 574 [4].)

(4) In order to accomplish the crime of attempted incest, it is not necessary that there be any penetration. (*People* v. *Gleason,* 99 Cal. 359 [33 P. 1111, 37 Am.St.Rep. 56]; *cf. People* v. *Esposti,* 82 Cal.App.2d 76, 78 [2] [185 P.2d 866]; *People* v. *Thomas, supra,* at p. 574 [2].)

Applying the foregoing facts to the above rules, it is apparent that defendant attempted to commit incest.

The record discloses that defendant had been engaged in sexual relations with his daughter since 1957. It was his practice to come into her bedroom, dressed only in his underwear, and state that he wanted some ''relief'' just before he would perpetrate the act upon her.

On December 16, 1959, defendant, dressed only in his underwear, came into his daughter's bedroom after she had gone to bed, and stated that he wanted some ''relief.'' She knew what he wanted and began struggling against his sexual advances. During the struggle defendant gave her a bloody nose, twisted her arm, and tore her clothing off.

Clearly the foregoing facts established that defendant was guilty of attempted incest.

*People* v. *Miller,* 2 Cal.2d 527 [42 P.2d 308], and *People* v. *Buffum,* 40 Cal.2d 709 [256 P.2d 317], relied on by defendant, are factually distinguishable from the present case and state only a general rule with respect to attempts.

*People* v. *Parker,* 74 Cal.App. 540 [241 P. 401], also relied on by defendant, was a case involving a conviction for a violation of Penal Code section 288, lewd and lascivious acts perpetrated on a child, prior to the 1937 amendment. It was contended that the defendant's acts showed either rape, intent to commit rape, or assault with intent to commit rape, and

that consequently he could not be held for a violation of section 288 as it then read.[1]

In rejecting the argument, the court simply held that the acts of the defendant in kissing and rubbing the victim could be separated from the other acts which he perpetrated on the child; that the question was one of fact for the jury; and that it was not impossible for the jury to conclude that he formed the intent to rape after he had committed the crime denounced by section 288 of the Penal Code. The court held that the finding of the jury and conviction for violation of section 288 of the Penal Code could be upheld despite the fact that the defendant's other acts might have been sufficient for the jury to conclude that he was guilty of the other crimes as well.

The court did not say that the subsequent acts of the defendant were insufficient in and of themselves to support a conviction for rape, attempted rape, or assault with intent to commit rape.

*People* v. *Rossi*, 37 Cal.App. 778 [174 P. 916], also relied on by defendant, was a case likewise involving a conviction for violation of section 288 of the Penal Code prior to the 1937 amendment. The defendant was discovered with a small girl on his lap with his hand up her dress and the girl saying, "It hurts." When the activities of the defendant were interrupted, the girl escaped from his grasp, at which time a witness observed that the defendant's private parts were out of his trousers and exposed. The defendant argued that the crime was attempted rape and that therefore he could not be convicted under the provisions of section 288 of the Penal Code as it then read.

On appeal, the court held there was no evidence that the defendant had sexual intercourse with the child, and in fact the girl testified that he did not. She also testified that when she made the statement, "It hurts," she was referring to the defendant's hugging of her body and pressing her. The court held that there was ample evidence of lewdness and that if it were so clear that no other conclusion was possible but that the defendant did commit acts denounced by other sections of the Penal Code, then it might agree with the defendant's contention, but that the evidence warranted the verdict, and

---

[1]Section 288 of the Penal Code at that time provided that a conviction for a violation of the section had to depend upon an act other than acts constituting other crimes denounced by the Penal Code.

the reviewing court was not at liberty to interfere with the determination of the trier of fact.

In the present case, defendant's conduct in seeking to accomplish his objective went well past the stage of "mere preparation." ▮ The fact that defendant's efforts were frustrated by his daughter's resistance does not relieve him from responsibility for those acts which had already been committed and which the jury determined were sufficient to constitute the crime of attempted incest. (*Cf. People* v. *Robinson,* 180 Cal.App.2d 745, 750 [3], [4] [4 Cal.Rptr. 679].)

▮ Second. *That the superior court lacked jurisdiction to try defendant for attempted incest as charged in the third count of the information.*

This contention is likewise untenable. A criminal complaint was filed in the Justice Court of the Weaverville Judicial District of Trinity County charging defendant with the crime of incest alleged to have been committed with his daughter. In a second count defendant was charged with forcible rape. Both offenses were alleged to have been committed on December 5, 1959, and it is clear from the record that the same transaction furnished the basis for both charges.

At the preliminary examination before the magistrate, the daughter testified: On December 5, 1959, she resided with her father in a trailer house in Trinity County. Her father came into her sleeping quarters between 10 and 11 o'clock that night. He stated he wanted some "relief." She knew why he was there. There was an extensive argument and struggle between them, and they slapped each other around. He was trying to tear her clothes off and succeeded. He was dressed in his underwear, which he removed, and succeeded in having intercourse with her. He had done the same thing on previous occasions over a period of about two years, the last five or six occurrences in Trinity County. She also testified that she and her father had a fight in her bedroom about sex on the night of December 16, and that although no sexual relations occurred that night, it was the same sort of thing as had taken place on December 5.

She gave the following testimony at the preliminary examination concerning the events of December 16 and 17:

"Q. [by Mr. Halpin, defendant's attorney, on cross-examination] Now, you mentioned the occasion of the visit to the District Attorney involved your brother leaving home, is that correct? A. Yes.

"Q. Was there a fight of any kind before he left? A. The night before. [I.e., December 16, 1959.]

"Q. And without going into detail, because it is probably more or less irrelevant, but just in a general way, what was the fight about? A. Well, my father and I had a fight in my bedroom that night.

"Q. Your father and you did? A. Yes.

"Q. What part did your brother play in that? A. Well, no part, but I suppose he heard it.

"Q. And was the fight about sex? A. Yes.

"Q. Was it the same sort of thing? A. Yes.

"Q. Why do you say you suppose your brother heard it? Was he hearby [sic]? A. Well, he was in the other bedroom.

"Q. Did he come in the room at any time? A. No.

"Q. What was the outcome of that fight? A. Well, I wound up with a bloody nose and he got mad and left.

"Q. I take it there was [sic] no sexual relations? A. No."

The sufficiency of the foregoing to justify an order of commitment is without question, and the magistrate held the accused to answer to the superior court on both counts of the complaint.

The district attorney thereafter filed an information based on the order of commitment, charging both rape and incest. Count one of the information charged incest; count two charged rape. Both offenses were alleged to have been committed on December 5, 1959. The district attorney added a third count charging attempted incest alleged to have been committed on December 16, 1959.

Counsel for defendant moved the superior court under section 995 of the Penal Code for an order setting aside the information, on the ground that defendant had not been legally committed by a magistrate and had been committed without reasonable or probable cause. The motion was denied, and the cause .went to trial upon all three counts.

The jury acquitted defendant of the charge of committing rape on December 5, disagreed as to his guilt of the crime of incest on the same date, and found him guilty of attempted incest committed on December 16. The count charging incest was dismissed on motion of the prosecution.

The record discloses that the count of attempted incest was related to and connected with the transaction which formed the basis of the commitment order. It was a part of defendant's course of conduct which he had engaged in with his daughter over a long period of time; and there was sufficient

evidence adduced at the preliminary examination, considering the proceedings as a whole, to permit the district attorney to add the count of attempted incest and to support the filing of the information.

 There is no constitutional objection to the filing of an information charging a different but related crime shown by the evidence taken before the magistrate bearing on the same transaction involved in the commitment order. (*Parks* v. *Superior Court*, 38 Cal.2d 609, 612 et seq. [241 P.2d 521].)

In *Parks* v. *Superior Court, supra,* this court interpreted section 739 of the Penal Code. Although the facts in that case are distinguishable from those in the present case,[2] the language of the *Parks* case disapproving a prior decision is applicable in a general way to the present case. It was there said: "Greater doubt attaches to the decision in *People* v. *Wyatt,* 121 Cal.App. 180 [8 P.2d 901]. There the defendant was held to answer on three counts of grand theft. The district attorney added five similar counts. In the final outcome the defendant was convicted on one of the added counts as to which there was evidence at the preliminary hearing that the offense had been committed. The transaction involved was one of several concerning which there was evidence at the preliminary hearing to show a common scheme or plan for the commission of a series of similar transactions within a period of two years. But there is nothing in the opinion to show that these transactions were *in any way related or connected.*" (P. 613.) (Italics added.)

*People* v. *Wyatt* involved a situation where the defendant was convicted of a count added to the information by the district attorney on the basis of the testimony of one Opal Dempster at the preliminary hearing. The transactions with Mrs. Dempster were not the basis of the commitment order, although such order involved alleged similar offenses with a complainant other than Mrs. Dempster. The testimony of Mrs. Dempster was offered at the preliminary hearing merely to show the common intent and scheme of defendant Wyatt. That is distinguishable from the present situation, where there is a continued series of illicit relations between the same parties, defendant and the prosecutrix.

---

[2]In the *Parks* case, the magistrate had dismissed the defendant as to a transaction with one Palmer on the ground that the evidence did not show a public offense had been committed. The district attorney thereafter added a count to the information charging the defendant with a crime as to the Palmer transaction. This court disapproved that procedure.

In *Parks* v. *Superior Court, supra,* this court carefully pointed out: "The foregoing conclusion does not apply to the charges based on the lumber transaction. As to it a commitment was ordered. As indicated herein the district attorney might include a related offense although the magistrate concluded impliedly or otherwise that the evidence did not show probable cause that such offense had been committed. The charges as to the theft of the lumber and the giving of a worthless check in payment thereof were related, arose out of the transaction which was the basis for the commitment and, depending on the evidence, could result in conviction on one charge or the other. The district attorney was therefore within his right to include the grand theft charge in the information if the necessary elements of that offense reasonably appeared from the evidence before the magistrate. Consequently as to this transaction the petitioner has not shown that he was not legally committed." (P. 613 [4].)

Defendant was not discharged by the magistrate at his preliminary hearing on the ground that no public offense had been committed. On the contrary, he was held to answer by the magistrate on both counts of incest and rape alleged to have occurred December 5.

 There was testimony adduced at the preliminary hearing of a series of incestuous acts over a period of time, including "probably five or six times" in Trinity County. In each instance the same pattern was followed by defendant.

The testimony regarding the events on December 5 can be considered in ascertaining the intent with which defendant entered his daughter's bedroom on December 16. (*People* v. *Vetrano,* 102 Cal.App.2d 627, 634 [5] [228 P.2d 42]; *cf. People* v. *Hamilton,* 88 Cal.App.2d 398, 401 [4] [198 P.2d 907]; *People* v. *Smithle,* 51 Cal.App.2d 693, 695 [1] [125 P.2d 553].)

In addition to this evidence of intent, there was evidence at the preliminary hearing that defendant had entered his daughter's bedroom on December 16 and had a fight with her "about sex" and that the fight was "the same sort of thing." The latter expression clearly referred to the events of December 5, which the complaining witness had related in detail.

Sufficient evidence showing probable cause to support the charge of attempted incest alleged to have occurred on Decem-

ber 16, 1959, therefore was presented at the preliminary hearing, and, accordingly, the district attorney had the right to file the additional count of attempted incest pursuant to the provisions of section 739 of the Penal Code. (*Parks* v. *Superior Court, supra,* 38 Cal.2d 609, 612 et seq.; *People* v. *Horton,* 191 Cal.App.2d 592, 597 [13 Cal.Rptr. 33]; *People* v. *Dean,* 158 Cal.App.2d 572, 575 [1] [322 P.2d 929].)

The count added to the information charged a different but related crime bearing on the same transaction involved in the commitment order.

Third. *That he was deprived of his constitutional right to counsel.*

This contention is unfounded. Defendant alleges that he was denied opportunity of consultation with his attorney and that his attorney was so indifferent and convinced of his guilt that the trial was a farce or a sham.

These rules are here applicable:

(1) When an accused is first brought before a magistrate following his arrest, he must immediately be informed of the charge against him and of his right to counsel at every stage of the proceedings. (Pen. Code, § 858.)

(2) An arrested person has the right to complete a telephone call to an attorney. (Pen. Code, § 851.5.)

(3) Any attorney may visit a prisoner at either the prisoner's request or the request of a relative or friend. (Pen. Code, § 825.)

(4) The magistrate must allow the person arrested a reasonable time to obtain counsel and may postpone the examination of the accused for such purpose. (Pen. Code, §§ 859, 860.)

(5) Upon the request of a defendant, the magistrate must require a peace officer to take a message to any counsel whom the accused may name in the judicial district in which the court is situated. (Pen. Code, § 859.)

(6) If the accused desires and is unable to employ counsel, the court must assign counsel to defend him. (Pen. Code, § 859.)

(7) In the absence of any showing in the record that the contrary was so, it must be presumed that the official duty set forth in the statutes enumerated above was regularly performed. (Code Civ. Proc., § 1963, subd. 15; *People* v. *Citrino,* 46 Cal.2d 284, 287 [2] [294 P.2d 32]; *In re Smith,* 33 Cal.2d 797, 801 [2] [205 P.2d 662]; *People* v. *Ryan,* 121 Cal.App.2d 651, 653 [1] [263 P.2d 850].)

(8) When a defendant asserts that his constitutional right to adequate representation of counsel has been violated, the burden of sustaining the allegation rests upon him. (*People* v. *Robillard*, 55 Cal.2d 88, 97 [8] [10 Cal.Rptr. 167, 358 P.2d 295].)

Defendant was represented by counsel at all stages of the proceeding. No request for a continuance to permit further consultation and preparation was made by or on behalf of defendant, and there is nothing in the record to indicate that he was not adequately represented by his counsel or that he was dissatisfied with his counsel's services.

Furthermore, the record shows that, among other things, defendant's counsel made a formal motion to have the prosecuting witness discuss the case privately with him; moved for a change of venue under section 1033 of the Penal Code, challenged the jury panel and caused special venire to be called; succeeded in obtaining a ruling preventing the district attorney from calling a witness who would have testified to incestuous acts committed by defendant with a person other than the prosecuting witness; and objected to certain questions asked the prosecuting witness on the ground that they were leading questions.

It is obvious that defendant has not met the burden imposed upon him of showing that his constitutional right to adequate representation by competent counsel has been violated.

Fourth. *That the trial court's failure to give an instruction on circumstantial evidence was prejudicial error.*

This contention is unsound. Defendant argues that the evidence upon which his conviction was based was entirely circumstantial and therefore it was mandatory for the trial court on its own motion to give an instruction that circumstantial evidence must not only be consistent with defendant's guilt but must be irreconcilable with the theory of innocence.

The bulk of the prosecution evidence consisted of direct testimony of the victim as to the acts of defendant on the night of December 16. Defendant made a statement when he entered his daughter's bedroom dressed only in his underwear that he "wanted some relief." This statement showed his intention to have sexual relations with his daughter. The words had a well-understood meaning for the daughter, because they were the same words he had used on a number of prior occasions when he forced himself upon her. Thus the jury could conclude, based upon defendant's own statement, that he had the requisite specific intent to perpetrate the crime of incest.

The prosecution did not rest its case wholly, or even substantially, upon circumstantial evidence, and hence an instruction on circumstantial evidence was not required. (*People* v. *Williams,* 155 Cal.App.2d 328, 331 [5] [318 P.2d 106] [hearing denied by Supreme Court]; *cf. People* v. *Ely,* 170 Cal.App.2d 301, 302 [2] [338 P.2d 483]; *People* v. *Roberts,* 167 Cal.App.2d 238, 242 [3] [334 P.2d 164].)

Fifth. *That the trial court erred in its instruction No. 15 in giving the last paragraph, which reads:* "... *the testimony of one witness worthy of belief is sufficient for the proof of any fact and would justify a finding in accordance with such testimony, even if a number of witnesses have testified to the contrary, if from the whole case, considering the credibility of witnesses and after weighing the various factors of evidence, you should believe that a balance or probability exists pointing to the accuracy and honesty of the one witness.*"

This contention is untenable. Defendant argues that the giving of the above paragraph in instruction No. 15 was error because the only witnesses were the two witnesses for the prosecution, defendant having neither taken the stand himself nor offered any witnesses in his defense.

The last paragraph of instruction No. 15 must be read in context with the preceding paragraph of said instruction, which reads as follows: "You are not bound to decide in conformity with the testimony of a number of witnesses which does not produce conviction in your mind, as against the declarations of a lesser number or a presumption or other evidence which appeals to your mind with more convincing force. This rule of law does not mean that you are at liberty to disregard the testimony of the greater number of witnesses merely from caprice or prejudice, or from a desire to favor one side as against the other. It does mean that you are not to decide an issue by the simple process of counting the number of witnesses who have testified on the opposing sides. It means that the final test is not in the relative number of witnesses, but in the relative convincing force of the evidence."

Not only was defendant not prejudiced by the giving of the last paragraph of instruction No. 15, but his rights were fully protected by other instructions given by the court that fully and fairly disclosed the duties imposed upon the jurors.

These instructions were to the effect that if a particular instruction was not applicable, the jury was to disregard it,

and that the entire set of instructions was to be considered as a whole and each regarded in the light of all others. They were instructed that they were the sole judges of the credibility of the witnesses; that defendant could choose to rely on the state of the evidence and upon the failure, if any, of the People to prove every essential element of the charge against him, and no lack of testimony on the part of defendant would supply a failure of proof by the People so as to support by itself a finding against him on any such essential element; and that the failure of defendant to deny or explain evidence against him did not imply, or by itself warrant an inference of, guilt, nor did it relieve the prosecution of proving every essential element of the crime and the guilt of defendant beyond a reasonable doubt.

Sixth. *That the court should have given further limiting instructions as to the effect to be given the testimony specifically relating to the act of December 5, in that such testimony should be considered by the jury only for the purpose of indicating the incestuous disposition of defendant bearing upon his intent to commit the act of December 16 of which he was convicted.*

This contention is also unfounded. The court instructed the jury with regard to evidence of other offenses in the following language: "Although evidence was offered for the purpose of showing that on more than one occasion the defendant and his daughter indulged in acts of sexual intercourse, you are not permitted to deliver a verdict of guilt in this case unless you find that the defendant committed the specific offenses which, the prosecution alleges, were committed: to wit on or about the 5th and 16th days of December, 1959.

"Evidence of any other incestuous conduct by the defendant may be considered by you only as, and for the sole purpose of, tending to show, if it does, the incestuous disposition of the defendant toward the said daughter and for whatever bearing it may have on the question of the intent of the defendant at the time of the alleged commission of the offense for which he is here on trial."

This instruction was properly given. (*People* v. *Vetrano, supra,* 102 Cal.App.2d 627, 634 [5]; *People* v. *Hamilton, supra,* 88 Cal.App.2d 398, 401 [4]; *People* v. *Smithle, supra,* 51 Cal.App.2d 693, 695 [1].)

It states the rule of law applicable in such instances, that is, that the test of the admissibility of other offenses is

whether it tends logically, naturally, and by reasonable inference to establish any fact material to the prosecution or to overcome any material matter sought to be proved by the defense. (*People* v. *Bowles,* 178 Cal.App.2d 317, 321 [2] [2 Cal.Rptr. 896].)

The above instructions fully and fairly informed the jury how they were to treat evidence of other offenses of a similar nature committed prior to the offense of which defendant was convicted.

Seventh. *That the trial court erred in instructing the jury:* "*An attempt to commit a crime consists of two elements, namely, a specific intent to commit the crime, and a direct but ineffectual act done toward its commission.*

"*In determining whether or not such an act was done, it is necessary to distinguish between mere preparation, on the one hand, and the actual commencement of the doing of the criminal deed, on the other. Mere preparation, which may consist of planning the offense or of devising, obtaining or arranging the means of its commission, is not sufficient to constitute an attempt; but acts of a person who intends to commit a crime will constitute an attempt where they themselves clearly indicate a certain, unambiguous intent to commit that specific crime, and, in themselves, are an immediate step in the present execution of the criminal design, the progress of which would be completed unless interrupted by some circumstances not intended in the original design.*"

This instruction was a correct statement of the law. (*People* v. *Franquelin, supra,* 109 Cal.App.2d 777, 785.)

Eighth. *That it was error for a judge other than the one who presided at the trial of the case to pronounce judgment and sentence.*

This contention is incorrect. It is settled that it is not error for a judge other than the one who tried a criminal case to pronounce judgment and sentence. (*People* v. *Cole,* 177 Cal. App.2d 458, 460 [1] [2 Cal.Rptr. 190] ; *cf. People* v. *Connolly,* 103 Cal.App.2d 245, 248 [4] et seq. [229 P.2d 112].)

Ninth. *That there was prejudicial error in that defendant was not asked at the time of sentence if he had legal cause why judgment should not be pronounced against him.*

This contention is untenable. It does not appear from the record whether he was asked if he had legal cause to show why judgment should not have been pronounced at the time he was

sentenced. The transcript merely indicates that defendant was adjudged guilty and sentence pronounced.

It must be presumed, in the absence of a showing to the contrary, that the statutory requirements with respect to the arraignment for judgment and sentencing were regularly performed. (Code Civ. Proc., § 1963, subd. 15; *People* v. *Citrino, supra,* 46 Cal.2d 284, 287 [2]; *In re Smith, supra,* 33 Cal.2d 797, 801 [2].) No showing to the contrary was made in the present case.

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., and White, J., concurred.

PETERS, J.—I dissent:

This defendant has been convicted of an offense of which he was not properly charged. The original complaint charged defendant, in two counts, with rape and incest, it being alleged that both acts were committed against defendant's daughter on December 5, 1959. At the preliminary hearing the prosecuting witness testified that these acts were committed on that date. She also testified that a fight over the "same sort of thing" occurred on December 16, 1959. The committing magistrate properly held the defendant to answer on the two counts charging rape and incest on December 5, 1959. But when the district attorney subsequently filed the information, he not only charged rape and incest on December 5, 1959, but also added a third count charging attempted incest on December 16, 1959. Counsel for defendant took proper means to have this third count dismissed, but was unsuccessful. As the majority opinion points out, the jury acquitted the defendant of rape on December 5, 1959, disagreed on the charge of incest on December 5, 1959, and found defendant guilty of attempted incest on December 16, 1959.

The Constitution of this state contemplates and expressly provides that a person shall be prosecuted only after he is charged by indictment or information, and in the latter case then only "after examination and commitment by a magistrate." (Cal. Const., art. I, § 8.) Section 739 of the Penal Code provides that it shall be the duty of the district attorney after commitment, to file an information charging the defendant with the offense or offenses named in the commitment "or any offense or offenses shown by the evidence taken before the magistrate to have been committed." Interpreted

in a vacuum, the quoted language could mean that the district attorney could charge in the information any offense shown by the evidence before the magistrate. But the language of the code section is not in a vacuum. It must be interpreted in connection with the Constitution which contemplates and provides that the defendant shall be forced to trial only for such charges as are set forth in or related to those contained in the commitment order. In a long line of cases, section 739 has been interpreted to mean that the district attorney may properly charge the defendant only with the offenses of which he has been held to answer by the magistrate and with any other offense that the evidence shows is "related" or "connected" with the offense or offenses charged. In determining what offenses are "connected" or "related" to the offenses for which defendant has been held to answer, the District Court of Appeal held, in *People* v. *Wyatt*, 121 Cal.App. 180 [8 P.2d 901], that the district attorney, under section 739 (then 809) of the Penal Code, could properly charge any offense disclosed by the evidence at the preliminary to have been connected with the offenses charged in the sense it was part of a "common scheme or plan." This case was specifically and properly overruled by this court in *Parks* v. *Superior Court*, 38 Cal.2d 609, 613 [241 P.2d 521]. That case held that the offenses to be added by the district attorney must be "connected" or "related" to the offenses set forth in the commitment other than because they were part of a common plan or scheme. The precise words of the court were, speaking of the *Wyatt* case, "The transaction involved [the one charged by the district attorney not found in the order of commitment] was one of several concerning which there was evidence at the preliminary hearing to show a common scheme or plan for the commission of a series of similar transactions within a period of two years. But there is nothing in the opinion to show that these transactions were in any way related or connected. Therefore language in that opinion [the *Wyatt* case] which may be deemed inconsistent with the views herein expressed is disapproved." (38 Cal.2d at p. 613.)

In the *Parks* case the committing magistrate held the defendant to answer on the charge that he had violated section 476a of the Penal Code (intentionally writing a bad check). The information filed by the district attorney charged defendant with grand theft from one Palmer, with intentionally writing a bad check for $843.76, and with grand theft of lumber having a value of $843.76. It was held that the

alleged offense against Palmer was not related to or connected with the bad check count. But the court upheld the lumber grand theft charge which was added by the district attorney, stating that, ''The charges as to the theft of the lumber and the giving of a worthless check in payment thereof were related, arose out of the transaction which was the basis for the commitment and, depending on the evidence, could result in conviction on one charge or the other. The district attorney was therefore within his right to include the grand theft charge in the information if the necessary elements of that offense reasonably appeared from the evidence before the magistrate. Consequently as to this transaction the petitioner has not shown that he was not legally committed.'' (At p. 614.)

Thus, this court then held that, if at the preliminary, evidence is introduced of an offense not charged but that is an integral part of the crime that is charged, the district attorney may include that related offense in the information; otherwise he may not include it. This has been the consistent interpretation of the appellate courts in this state of section 739 and the *Parks* case. Thus, if on a charge of manslaughter evidence is introduced at the preliminary that the offense may have been murder, then murder may be charged in the information (*People* v. *McGee,* 31 Cal.2d 229 [187 P.2d 706] ; cf. *People* v. *Bird,* 212 Cal. 632 [300 P. 23]). Or, where a violation of Penal Code section 288 is charged, and evidence is introduced that the defendant also violated section 288a or threatened the victim with a deadly weapon, then an information can be filed adding counts charging a violation of section 288a (*People* v. *Evans,* 39 Cal.2d 242, 249 [246 P.2d 636] ; *People* v. *Grimes,* 148 Cal.App.2d 747 [307 P.2d 932] ) or assault with a deadly weapon (*People* v. *Evans, supra*). And where a complaint charges assault with intent to commit rape, an information can be amended to add counts of attempted rape and assault where the added charges ''were offenses against the same girls named in the original information and were predicated upon their testimony as to the same two occurrences which underlay the charges set forth in the original information.'' (*People* v. *Tallman,* 27 Cal.2d 209, 213 [163 P.2d 857].)

The cases cited by the majority do not announce a different rule. In *People* v. *Horton,* 191 Cal.App.2d 592 [13 Cal.Rptr. 33], the committing magistrate held the defendant to answer for two counts of statutory rape. The district at-

torney filed an information adding two counts of violations of Penal Code section 288. The District Court of Appeal upheld the information on the ground that each of the offenses which were the basis of the rape charge also constituted the basis of the 288 charge. The court stated, "It is clear from the record herein that as to each count as to which the appellant was convicted, the same transaction which was the basis for the commitment order provided the elements of the crime of which the appellant was found guilty." (P. 598.)

And in *People* v. *Dean*, 158 Cal.App.2d 572 [322 P.2d 929], the complaint charged defendant in two counts with grand theft and with a violation of Vehicle Code section 503. Both of these counts charged the felonious taking of an automobile on a certain date. At the preliminary, it appeared that the defendant took the car by a threat of force. The appellate court properly upheld an information that added a count for robbery of the same auto on that same date. It is clear, however, that when the connection between the offenses charged in the commitment and the evidence of other crimes is such that they are connected only by a common plan or design, the other crimes may not properly be included in the information filed by the district attorney. That is the precise, plain and unambiguous holding of the *Parks* case. The majority, in an attempt to distinguish that case, actually hold that the added offense may be included when its only connection with offenses charged is that "[i]n each instance the same pattern was followed by defendant." (*Ante*, p. 811.) In so holding the majority, while purporting to follow *Parks*, actually overrule it. This cavalier treatment of a prior decision should not be countenanced. If *Parks* is to be overruled it should be done frankly and not by indirection.

The offenses here charged to have been committed on December 5th, are, of course, separate and distinct offenses from the one charged to have been committed on December 16th. Proof of the December 5th offenses, even though committed against the same person, has no relation to the separate and distinct offense alleged to have been committed on December 16th. The only connection between the offenses is that they are related or connected because they are part of a common plan or scheme. Under the *Parks* case this is not enough.

The fact that the evidence sustains the conviction is not significant. The beneficent provisions of article VI, section

4½ of the Constitution have no application to the violation of such a constitutional right.

I would reverse the judgment on the ground that the trial court had no jurisdiction of the offense of which defendant has been convicted.

Dooling, J., concurred.

Appellant's petition for a rehearing was denied July 3, 1962. Peters, J., was of the opinion that the petition should be granted.