[Crim. No. 7359. Second Dist., Div. One. Nov. 30, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. SAM HENRY
MITCHELL, Defendant and Appellant.

Harold J. Ackerman, under appointment by the District
Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Norman H. Sokolow and
Matthew M. Kearney, Deputy Attorneys General, for Plain-
tiff and Respondent.

FOURT, J.—This is an appeal from a judgment of convic-
tion of six counts of burglary.

In an information filed in Los Angeles County on March 15,
1960, the defendant was charged with committing seven bur-
glaries. In Count 1 of the information it was stated in effect
that on February 8, 1960, defendant burglarized the house
occupied by Mattie Brown; Count 2 charged that on February
6, 1960, the defendant burglarized the office of George Essing;
Count 3 charged that on February 18, 1960, defendant bur-
glarized the residence occupied by Rosie Lee Allen; Count 4
charged that on February 4, 1960, defendant burglarized the
garage of Byron Jarrett; Count 5 charged that on February

7, 1960, defendant burglarized the apartment occupied by Daisy Walker; Count 6 charged that on February 6, 1960, defendant burglarized the residence of Rosie Lee Allen and in Count 7 it was charged that on February 7, 1960, defendant burglarized the apartment occupied by Addie Bonney. The information was amended a few minutes before the start of the trial by the setting forth therein that the defendant had been convicted of burglary in the State of Illinois on October 3, 1952, and had served a prison term therefor. The defendant admitted the prior conviction.

The public defender was appointed to represent the defendant at the time of his arraignment on March 17, 1960. On March 22, 1960, the defendant, represented by Charles Boags of the public defender's office, pleaded not guilty and the cause was set for trial on April 28, 1960. On April 28, 1960, the defendant was in court represented by M. Horton of the public defender's office. Defendant's counsel asked for a continuance and apparently stated to the judge, "The defendant informs me his uncle has contacted him, and says he might be able to get funds for a private attorney for him." The deputy district attorney stated in answer thereto that he thought that counsel had learned of the desire for a continuance only the night before. The judge, without anything further, apparently said, "The motion for a continuance is denied. That expected uncle—those things don't materialize." The following then occurred:

"THE DEFENDANT: Your Honor ——

"THE COURT: The motion for continuance is denied. The People are ready for trial and you should be, too.

"THE DEFENDANT: May I say something?

"THE COURT: Yes.

"THE DEFENDANT: I am not expecting an uncle to secure a lawyer; I want to get one myself. I already talked to the lawyer.

"THE COURT: He should have been here today.

"THE DEFENDANT: He couldn't make it today.

"THE COURT: That doesn't make any difference. You had plenty of time. This matter is going to trial this morning."

The department of the court where the order denying a continuance had been made was congested and the defendant was shifted to another department of the court for trial. The trial was started at or about 10:40 a. m. on Thursday, the date as indicated. By noon a jury was selected and the case was adjourned until 2 p. m. The clerk's minutes recite that

the defendant was represented at that time by F. Kilbride of the public defender's office. The reporter's transcript indicates that Mark J. Horton of the public defender's office was representing the defendant. In any event, during the afternoon session which adjourned at 3 p. m., the prosecution examined and defendant's counsel (whoever he was) cross-examined nine witnesses. Court was adjourned to 9:15 a. m. April 29 (Friday).

On April 29, 1960, defendant's counsel approached the bench and advised the judge that the defendant "wishes to dismiss me as counsel on this case." The following then occurred.

"Is that correct, Mr. Mitchell?

"THE DEFENDANT: That is correct.

"THE COURT: Do you want to try the matter yourself?

"THE DEFENDANT: If necessary, it will have to be that way. In court yesterday I asked for a continuance for time to acquire a private lawyer and was refused.

"THE COURT: That is correct.

"THE DEFENDANT: I told him I didn't believe this gentlemen was qualified and could meet the standards of the prosecutor. So far, I don't think he have. Remembering this and knowing what was said in court yesterday, and remembering the cross examinations, I don't think in no kind of way I might get a fair chance or an equal chance.

"THE COURT: Is it your desire to represent yourself?

"THE DEFENDANT: I have no particular desire. What I wanted was a continuance.

"THE COURT: I'm not going to grant you a continuance. If you are making a motion to that effect, it is denied.

"THE DEFENDANT: Could I make a motion for a continuance until Monday morning?

"THE COURT: For what purpose?

"THE DEFENDANT: To either have a lawyer here or go on with it myself.

"THE COURT: That motion has been previously denied by another court to have private counsel substituted in.

"THE DEFENDANT: If it is compulsory I do it myself; if I dismiss him, then I'll go on myself.

"THE COURT: That is up to you. You can have the public defender represent you, or if you want to dismiss him and represent yourself, that is your privilege.

"THE DEFENDANT: I don't want to represent myself, but

496

even more so, I don't want him representing me because he haven't shown me any qualifications.

"THE COURT: Under the circumstances here, with all these witnesses testifying, you are going to have to represent yourself. The Court is not going to appoint new counsel for you. We are going to continue at this time.

"THE DEFENDANT: There are two particular witnesses that if I do represent myself, I would like to call back to the stand. One is Mrs. Addie Bonney, and the other is the lady who stated she saw me get in the car with a fellow, in a black Cadillac. I would particularly like to bring those back to the stand.

" . . . . . . . . . . . .

"You understand representing yourself would be awfully difficult. There are some legal problems involved.

"THE DEFENDANT: Yes. I know it's rather difficult, but it's better than nothing at all.

"THE COURT: You have had able representation as far as the Court could see up to this particular point. If you want to represent yourself, the Court at this time will relieve the public defender representing you and you can represent yourself in this matter.

" . . . . . . . . . . . .

"THE COURT: You understand, if you represent yourself, you will not be given any privileges that you are not entitled to, and that no one else is entitled to. You understand that?

"THE DEFENDANT: I understand that.

"THE COURT: The mere fact that you are representing yourself doesn't entitle you to anything more than you have at the present time.

"THE DEFENDANT: Yes, I understand that.

"THE COURT: The Court nor anyone else is supposed to take care of your problems. You are going to handle the matter yourself. Do you understand that?

"THE DEFENDANT: Yes.

"THE COURT: Then you are willing to do that?

"THE DEFENDANT: I am willing.

" . . . . . . . . . . . .

"THE DEFENDANT: As long as I can't use him, I must continue myself, and I'd rather continue myself than to use him.

"THE COURT: When you say 'him,' you mean the public defender?

"THE DEFENDANT: I mean the public defender. I am not

casting any light on his ability. I think he is very competent. But maybe there is something about this that he don't quite understand and that I do myself. There is some point that I know about that he doesn't understand.

"THE COURT: All right. The public defender is excused from representing you here."

The case then proceeded to further trial with the defendant attempting to represent himself. The prosecution called four police officers to testify. The defendant made an effort to cross-examine each of them and as might well be expected, made a miserable failure in the attempt.

The prosecution thereupon rested its case. It was at that time 11 a. m. Friday, April 29, 1960. The court then adjourned the matter to 11 Monday morning, May 2, 1960. At that time, without taking any testimony, the cause was continued to 2 p. m. Monday, May 2. Court was in session for five minutes during the afternoon at which time the defendant attempted to further cross-examine a policeman. The judge then adjourned the court until the next day at 10 a. m. On May 3, 1960, at 10 a. m. the court reconvened and defendant attempted to examine two witnesses. The prosecution thereupon announced "we rest." The following then occurred:

"THE COURT: Do you wish to take the witness stand yourself, or do you have any other witnesses, Mr. Mitchell?

"MR. MITCHELL: No, your Honor.

"THE COURT: Do you desire to take the witness stand?

"THE DEFENDANT: No.

"I move that the trial be dismissed on the grounds of insufficient evidence.

"THE COURT: That motion is denied.

"The jury is advised that the defendant need not take the stand if he does not desire to. I will give you an instruction to cover that point; but the People must prove him guilty beyond a reasonable doubt. *It is up to the defendant to prove his innocence.*

"*You understand that?*

(*The jurors nodded affirmatively.*)" (Emphasis added.)

Arguments by the deputy district attorney and the defendant were then had and part of the instructions were read to the jury. At 12 noon court was adjourned to 1:30 p. m. and at that time the court apparently was further adjourned to May 4 (the next day) at 9 a. m.

Court convened on May 4 at 9:10 a. m., the judge continued with the reading of the balance of the instructions, which

reading was concluded in about ten minutes, and the jury left the courtroom to deliberate at or about 9:20 a. m.

The deputy district attorney stated with commendable frankness in his argument to the jury, "as to Count V and VII, I think we should treat those two counts as one count. They have been filed as separate counts in this Information, but the evidence I think clearly discloses that there was only one burglary. We will get around to that in a moment. . . . Now, I say that the defendant entered only one building there. Of course you have to examine the court's instructions on the law here, but this doesn't seem to have been two separate entries, even though more than one cupboard in the kitchen was broken into. If burglary is to be defined as the entry of a building, a place that could be inhabited, whether or not it is, then there was an entry and a burglary, one individual bearing the requisite intent to steal went into this building in the first place, but simply breaking open a couple of chests and breaking open a locker, that doesn't make each breakage an individual burglary. So I submit that to you.

"I suggest to you perhaps by way of simplicity in this case that you take both of those witnesses as witnesses to Count V of this Information and necessarily find the man not guilty of Count VII because there is only one burglary. This may not appeal to you when you discuss this case in the jury room; nonetheless, I would recommend it. There was only one burglary, if any, with respect to this hotel across the street from where the defendant lives." The judge nevertheless submitted to the jury forms of verdicts on both Counts 5 and 7. The jury returned to the courtroom at about 11 a. m. with its guilty verdicts as follows: Count 1—burglary second degree; Count 2—burglary first degree; Count 3—burglary second degree; Count 4—burglary second degree; Count 5—burglary first degree; Count 6—burglary first degree; Count 7—burglary first degree.

Time for hearing a motion for a new trial and sentence was set and continued from time to time and finally was heard on June 14, 1960.

The defendant made a motion for a new trial on June 14, 1960, which was denied forthwith. Immediately thereafter the following occurred:

(Deputy District Attorney Fitts)

". . . the Court should I believe exercise its power in denying that motion to also change the degree of several of these offenses to conform to the proof.

"THE COURT: I will do that on your motion if you wish to make a motion.

"MR. FITTS: All right, your Honor.

"With reference to Count II, I am not moving for a new trial, your Honor. The defendant has so moved. And the Court in denying that may nonetheless reduce the degree of that offense to conform to the proof.

"As to Count III, the jury returned a verdict of the first degree. That was the entry of the real estate office occupied by Mr. Essing, a place of business and not a place of residence. That should be second degree rather than first degree.

"With respect to Count VI, that involved the entry of the apartment of Rosie Lee Allen. The Court will recall that I advised the jury that should be second degree, but they saw fit to find it in the first degree nonetheless. That also should be reduced from a first degree burglary to a second degree burglary.

"With respect to Count VII, that reflects a duplication of effort on the part of our office and on the part of this defendant, it appearing to be the same offense as alleged in Count V of the Information. The People could move that a new trial be granted as to Count VII, wherein the jury returned a verdict of guilty of burglary in the first degree. That motion being granted, the People move to dismiss that count.

"THE COURT: The other two items are II and IV.

"MR. FITTS: II and VI, your Honor.

"THE COURT: At this time, as to Count VII, the motion for a new trial will be granted.

"MR. FITTS: I move to dismiss that count now.

"THE COURT: On motion of the People, that count will be dismissed, in lieu of granting a new trial.

"On Counts II and VI the degree of burglary will be reduced from first degree to second degree."

The defendant was then sentenced to the state prison— Counts 1 and 2 to be served consecutively and the remaining counts concurrently.

Under the circumstances of this case no useful purpose would be served in setting forth the facts in detail. Suffice it to say that there were burglaries committed and items which were taken were found in the defendant's residence or possession with reference to Counts 1, 2, 3, 4, 5 and 6. Corroborative evidence was found in certain of defendant's alleged statements and in the use of a fictitious name in pawning a stolen article.

Under the circumstances of the record this court appointed counsel to represent the appellant. The appellant now contends that the trial court erred by permitting the defendant to discharge the court-appointed counsel, and in permitting him to attempt to represent himself. The matter is stated by the appellant very similarly to the fashion in which the appellant stated his claim in the case of *People* v. *Linden,* 52 Cal.2d 1 [338 P.2d 397] at page 16:

"Defendant's appeal counsel assert that the trial court did not determine that defendant understood the issues and available defenses and had capacity to effectively waive counsel, as required by *Johnson* v. *Zerbst* (1938) 304 U. S. 458, 464-465 [58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357]; *In re James* (1952) 38 Cal.2d 302, 313 [8] [240 P.2d 596]; and *People* v. *Chesser* (1947) 29 Cal.2d 815, 822-825 [4-6] [178 P.2d 761, 170 A.L.R. 246]. Further, they say, the following conduct of defendant shows that he was not competent to waive counsel: . . ."

In *Linden,* however, the trial court held lengthy discussions with the defendant and had ample opportunity to observe his abilities and disabilities. The opinion in *Linden* further states at page 18:

"As in *People* v. *Mattson* (1959), *supra,* 51 Cal.2d [777 (336 P.2d 937)] at pp. 788-789 [1], 794 [18], the entire record establishes that defendant was fully aware of his situation when he insisted upon representing himself, and the court was not required to demand that defendant, as a prerequisite to appearing in person, demonstrate either the acumen or the learning of a skilled lawyer. No abuse of discretion is shown."

Had the trial judge in the case before us examined the defendant as to his capacity to represent himself, it would have been ascertained that defendant had only a fourth-grade education; that at the age of 12 years he was committed to a boys' school in Illinois for burglary and that a great part of his life had been spent in penal institutions. The record discloses that the defendant expressed himself poorly; that his knowledge of procedure was faulty; that he was ignorant of the rules of evidence and that he had little or no skill with reference to the matters at hand. In any event, he was no match for the prosecutor in any respect. It is to the credit of the prosecutor that he pointed out to the jury that the defendant should not be convicted of both Counts 5 and 7. Further, at the time of sentence the prosecutor caused Counts 2 and 6 to be reduced in degree to meet with the proof and

allegations. This all in spite of the fact that the defendant in his ignorance had made no claim to such advantages.

However, it is true that in this state the law presently seems to be to the effect that there is no requirement that the trial judge conduct a formal hearing before permitting a defendant to represent himself. (*People* v. *Williams,* 174 Cal.App.2d 364, 389 [345 P.2d 47] ; *People* v. *Simon,* 107 Cal.App.2d 105, 118 [236 P.2d 885] ; *People* v. *Chesser,* 29 Cal.2d 815, 822 [178 P.2d 761, 170 A.L.R. 246].)

It seems that if it appears that the trial judge has ascertained that the defendant "clearly understands the nature and effect of his waiver," enough has been done.

In *In re James,* 38 Cal.2d 302, 313 [240 P.2d 596], the court did, however, state:

"Moreover, the court cannot accept a waiver of counsel from anyone accused of a serious public offense without first determining that he 'understands the nature of the charge, the elements of the offense, the pleas and defenses which may be available, or the punishment which may be exacted.' (*People* v. *Chesser,* 29 Cal.2d 815, 822 [178 P.2d 761] ; *Uveges* v. *Pennsylvania,* 335 U. S. 437, 440-441 [69 S.Ct. 184, 93 L.Ed. 127].) There was no attempt to make such a determination in this case. The record shows that defendant was an itinerant farm hand, without formal education, without money, and evidently without previous experience with courts."

With reference to the last phrase of the quoted language from *James* it can hardly be said that serving in reformatories and prisons in Illinois necessarily schooled the defendant to the extent that he was well able to defend himself in court in California. The judge should not be placed in the position of being a glorified legal aid bureau—at the same time it is apparent that under the present system as administered a defendant can in effect be stripped of his constitutional rights because of his abysmal ignorance. In any event under the circumstances of this case, it is not necessary to determine whether it was error to dismiss the public defender and to permit the defendant to represent himself.

 Appellant asserts that the judge's instructions to the jury that *"it is up to the defendant to prove his innocence"* was error as a matter of law. The reporter's transcript is certified as being true and correct by the reporter and the judge certified that no objection was made to the transcript either by the defendant or the district attorney. It is to be noted further that in addition to the statements indicated the

judge stated to the jury, "you understand that?" and the jurors all "nodded affirmatively."

The Attorney General argues that "[a]t worst, the court's comments left the jury confused." A defendant in any criminal case (and certainly in one where the term to be served will be very extensive if the defendant is found to be guilty) has a right to more than a completely erroneous instruction from the judge and a confused jury.

This is no ordinary sterile technicality. It goes to the very essence of our system of administering the criminal law. True it is that it may have been a misstatement, or a slip of the tongue, nevertheless the statement was made and the damage was never completely undone. Who can say with reasonable certainty that the jurors in their deliberation in the jury room paid no attention to the improper instruction of the judge and to their visible acknowledgment to him that they so understood the erroneous instruction to be the law.

The jurors obviously paid little or no attention to parts of the formal written instructions of the judge. The jury was clearly told in such instructions what constituted first and second degree burglary and nevertheless it proceeded to find the defendant guilty of first degree burglary in Counts 2 and 6, even though admittedly there was no evidence whatsoever to support the verdict of first degree burglary under such counts. The jury was also told by the prosecutor that Counts 5 and 7 were duplications and in effect that the jury should find the defendant guilty of only one of such counts. It is apparent that the jury paid little or no attention to the statements of the prosecutor and found the defendant guilty of first degree burglary in both Counts 5 and 7, in spite of the fact that the evidence demonstrated that there was but one offense.

Defendant is entitled to a fair trial and proper instructions. Judgment is reversed.

Wood, P. J., and Lillie, J., concurred.