[Crim. No. 4174.   First Dist., Div. Three.   Jan. 29, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIE FLOYD TERRY, Defendant and Appellant.

Homer L. McCormick, Jr., under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., Robert R. Granucci and Barry L. Bunshoft, Deputy Attorneys General, for Plaintiff and Respondent.

DRAPER, P. J.—A jury found defendant guilty of petty theft and also found that he had been convicted and had served prison terms for four other felonies (three second degree burglaries and one petty theft with priors). He was sentenced to prison (Pen. Code, § 667). He appeals from the judgment.

There is evidence that defendant and one Williams were found about midnight attempting to conceal themselves in a storage yard used by a supply company. About 1,000 feet of copper wire cut from a spool in the yard lay outside the wire fence of the enclosure. Inside it, a few feet from defendant, was a pair of cutting pliers. Near where Williams had hidden was a hacksaw. Both were charged. Williams apparently pleaded guilty, and the case was tried only as to defendant. Recordings of confessions by defendant were played to the jury, but he contended that these statements were obtained by force or threats.

The sole question is whether defendant properly waived counsel at trial. Mr. Maynard represented him under court appointment at preliminary examination, and, with defendant's consent, was appointed as counsel in superior court. Defendant pleaded not guilty January 12, and trial was set for February 5. On that date, trial was continued on the court's own motion to February 7 and then was similarly continued to February 13, when it was assigned to another department for trial. Mr. Maynard appeared for him throughout. When the case was called, with the jury panel present, defendant announced that he didn't want his pres-

ent attorney, and asked for another. The court asked why defendant desired to discharge Mr. Maynard, and was told "He wanted me to plead guilty of something I wasn't guilty of."

The court promptly excluded the prospective jurors from the courtroom, and carefully explained to defendant that Mr. Maynard was known to the judge to be competent and conscientious. It was also explained to defendant that counsel might feel it his duty to advise a guilty plea, but could nevertheless defend adequately if the advice were not followed. The court then detailed the disadvantages under which defendant would labor in attempting to defend himself, and again extolled the capabilities of Mr. Maynard. Defendant said: "I'd — I don't think I would be worse off. I mean I will — willing to take the responsible, whatever it is. It couldn't have — be any worse is I not satisfied with the counsel." After further colloquy, he said "I prefer to, I mean, defend my own case", and, later, "I think I be — do a pretty good job of it." He later protested several times that he did not even want Mr. Maynard in an advisory capacity, but Maynard consented to serve and was so designated. Defendant again protested, and the court told him that he could conduct his own case, but could call on Mr. Maynard for any advice desired. Mr. Maynard sat throughout the trial, but apparently was never called upon by defendant. Defendant tried his own case, and did it poorly. Whether due to the clearness of the evidence or the nature of the defense, the jury returned after 14 minutes with verdicts finding him guilty and determining that he had suffered each of the four alleged prior convictions.

California has long given full recognition to the constitutional and statutory guaranties of the right to counsel (e.g. *In re James*, 38 Cal.2d 302 [240 P.2d 596]), a right which in some respects is more comprehensive in this state than in the federal system (*People* v. *Mattson*, 51 Cal.2d 777, 795 [336 P.2d 937]). In 1963, the United States Supreme Court held that this federal constitutional guaranty is one of the fundamental rights essential to due process, and thus is extended to state courts by the Fourteenth Amendment (*Gideon* v. *Wainwright*, 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733]). The federal courts indulge every reasonable presumption against waiver of fundamental constitutional rights (*Johnson* v. *Zerbst*, 304 U.S. 458, 464 [58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357]; *Aetna Ins. Co.* v. *Kennedy,*

301 U.S. 389, 393 [57 S.Ct. 809, 81 L.Ed. 1177]). California courts have been equally vigilant to protect the right to counsel (*People* v. *Manchetti,* 29 Cal.2d 452 [175 P.2d 533]; *In re James, supra,* 38 Cal.2d 302; *People* v. *Mitchell,* 197 Cal.App.2d 493 [17 Cal.Rptr. 410]).

A defendant may waive counsel (*People* v. *Mattson, supra,* 51 Cal.2d 777), and since a court usually cannot compel a mentally competent defendant to accept representation against his will (*id.,* pp. 788-789; *People* v. *Rose,* 42 Cal.App. 540, 553-554 [183 P.874]) it follows that obdurate insistence by such a defendant must be recognized. The court is, of course, under an obligation to explain to a defendant who desires to represent himself the difficulties he will encounter, and to assure that he understands the risks of that course. It is not, however, required to demand that such a defendant demonstrate or possess ''either the acumen or the learning of a skilled lawyer'' (*People* v. *Linden,* 52 Cal.2d 1, 18 [338 P.2d 397]). A contrary rule would enable a stubborn defendant to defer his trial indefinitely, to cause repeated continuances even after jurors had been summoned or impanelled, and to make a shambles of court calendars and of the litigation of others equally entitled to the time and consideration of the courts.

Court-appointed counsel must be accepted by the accused in the absence of some compelling reason to the contrary (*People* v. *Ortiz,* 195 Cal.App.2d 112, 116 [15 Cal.Rptr. 398]), and he is not entitled to court appointed counsel of his own choosing (*People* v. *Chessman,* 52 Cal.2d 467, 491 [341 P.2d 679]).

The court thus was not compelled to appoint new counsel because of defendant's unfounded dissatisfaction with Mr. Maynard. Defendant may have failed to understand this at the outset. But the colloquy of court and defendant occupies some 14 pages of transcript. By the time defendant finally elected to proceed alone, the court had made clear to him, beyond any possible confusion resulting from his lack of language facility, that he must choose between representation by his then counsel or by himself. Defendant then, in at least three statements, made it completely clear that he elected to defend himself.

Even if defendant intended to seek counsel himself (a contingency not even suggested either in the trial court or here), he was required to act with some degree of promptness. He showed no sound reason for discharge of Mr. Maynard. To replace that attorney would require continuance to permit

new counsel to prepare. A rule permitting such a move at mere whim would invite repetition and intolerable interference with orderly discharge of all business of the court. A long-delayed request for substitution unless for compelling reason, need not be granted (*People* v. *Whinnery*, 55 Cal.App.2d 794 [131 P.2d 33]; *People* v. *Linden, supra*, 52 Cal.2d 1, 15; *People* v. *Dorman*, 28 Cal.2d 846, 850-852 [172 P.2d 686]). Even the most reluctant defendant must some day be tried, and the court is not required to disrupt its calendars indefinitely while awaiting that day.

Events proved that defendant was unwise in choosing to represent himself. But the trial judge displayed patience, kindly consideration, and meticulous care in explanation in his efforts to persuade defendant to continue representation by counsel. Defendant's firm insistence upon discharging Maynard and representing himself left the court no choice. Even then, counsel remained available throughout trial, but defendant continued to spurn his services. Defendant's performance in trial showed that he is neither sharp in understanding nor facile in the use of language. But there is no remote suggestion that he is mentally incapable of determining whether to represent himself. He made his choice, and persisted in it to the point where the court was compelled to accept it. Moreover, his testimony does make clear that there was in fact no defense to this uncomplicated charge.

When the prosecution laid the foundation for introduction of a recording of defendant's statement after his arrest, the court asked if defendant wished to cross-examine. His examination consisted of statements by him that the statement was coerced. The court asked if he wished to testify on that feature. He did so. He was by no means compelled to testify, the cross-examination was restricted by the court to the issue of voluntariness, and no error appears. When the prosecution rested, defendant made statements indicating that he wished to testify. The court then advised him that he was not compelled to testify. He now complains that the effect of advising him of his right in the jury's presence was to compel him to take the stand. The transcript by no means bears out the claim, and we find neither error nor prejudice.

Judgment affirmed.

Salsman, J., and Devine, J., concurred.