[Crim. No. 13449.    Second Dist., Div. One.    Dec. 26, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT LEE JOHNS, Defendant and Appellant.

Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and Charles P. Just, Deputy Attorneys General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of robbery and an attempted appeal from the order denying motion for new trial.

In an information filed in Los Angeles on September 13, 1963, Robert Lee Johns (appellant herein) and codefendant Cornelius O'Neal were charged with robbing Phillip Jaffe of a revolver and about $60 in money on August 23, 1963. It was

further charged that at the time of the arrest of defendants, they were armed with a concealed deadly weapon, a revolver, and that at the time of the commission of the offense, they were armed with a deadly weapon, a revolver. Two prior felony convictions (auto theft and forgery) were charged against O'Neal and one prior felony conviction (Health & Saf. Code, § 11530) was charged against Johns. Defendant pleaded not guilty. In a trial a written confession of O'Neal was introduced into evidence. On appeal the cause was reversed as to O'Neal because of the *Dorado* [62 Cal.2d 338 (42 Cal.Rptr. 169, 398 P.2d 361)] rule and as to Johns because the "improper admission of the confession against O'Neal was prejudicial error in the trial of Johns." The cause was retried and each defendant was found guilty of robbery in the first degree. Johns was found to be armed at the time of arrest as charged and unarmed at the time of the commission of the offense. O'Neal was found to be armed at the time of the commission of the offense and at the time of the arrest. A timely notice of appeal was filed by Johns.

The record discloses that following the filing of the remittitur on February 8, 1966, from the previous appeal the defendants were returned to court. On March 14, 1966, defendants requested a continuance "to obtain private counsel." On March 21, 1966, the public defender was appointed to represent O'Neal. Johns was to obtain private counsel. On April 7, 1966, the public defender was relieved as counsel for O'Neal and Attorney Lenoir was appointed to represent O'Neal. On motion of Johns the matter was continued to April 14, 1966, he to "obtain private counsel." On April 14, 1966, Attorney John Marshall was appointed to represent Johns. On May 19, 1966, on motion of defendants the trial date was continued to July 11, 1966. On July 11, 1966, the cause was continued to July 19, 1966. On July 19, 1966, the cause was to trail to July 20, 1966. On the latter date each defendant admitted the charged priors. In a jury trial, commencing on July 20, 1966, the defendants were found guilty on July 25, 1966, as heretofore indicated. On August 24, 1966, the court ordered Johns referred to the Department of Corrections for review with reference to placement pursuant to section 1203.03 Penal Code. On September 7, 1966, the probation and sentence proceedings were continued to September 21, 1966. Johns requested the additional time "in order to obtain different counsel." On September 21, 1966, the proceedings were continued to September 28, 1966. There was a

motion of Johns "to appear in Propria Persona" and such was continued to September 28, 1966, on his request. On September 28, 1966, a motion of Johns to relieve John Marshall as his attorney was granted and Johns was permitted, at his request, to appear in propria persona. A motion of Johns for a transcript of the testimony of the prior or first trial was denied. A motion for a new trial was transferred to Department 109 and continued to November 7, 1966. Johns was "granted propria persona privileges to include use of law library and approved legal runner at his own expense." On October 10, 1966, Johns was granted additional "pro per privileges" such as telephone calls, conferring with "legal runner" and use of typewriter. On October 31, 1966, Johns, in propria persona moved for an extension of time to December 7, 1966. On December 7, 1966, Johns' motion to disqualify Judge Alexander was denied, a petition for a writ of habeas corpus was denied, a motion for a new trial was denied, probation was denied and Johns was sentenced to the state prison.

A résumé of some of the facts is as follows: Phillip Jaffe was employed at Cappy's Liquor Store located near the intersection of 4th and Gless Streets in Los Angeles County on August 23, 1963. At about 10 p.m. on that date O'Neal, whom Jaffe knew, entered the liquor store with Johns and they looked around; Jaffe momentarily lost sight of the respective positions of defendants when O'Neal grabbed him about the neck and threw him to the floor. O'Neal tried to open the cash register but was unsuccessful. He then forced Jaffe to open the register while holding a gun to Jaffe's head. O'Neal took the money from the register, a revolver from under the counter and some cigarettes and called out, "Come on, let's go." With that O'Neal and Johns went out and ran down the street. Jaffe immediately called the police.

At the time of the robbery Officer Nunley, of the Los Angeles Police Department, was driving east in his personal car in the curb lane on 4th Street and stopped at a red traffic signal at the Gless Street intersection. Nunley saw Johns standing at the entrance to Cappy's Liquor Store. Johns was "more in than out" of the store and he "was holding his right hand in his waist and as several children approached the door, he would wave his . . . left hand and they would run." Nunley saw O'Neal inside the store, behind the counter, with an automatic revolver in his right hand and he appeared to be removing the money from the cash register. Nunley had

known Jaffe for about four years. The traffic signal changed and Nunley proceeded to within 15 or 20 feet of the store. Johns was still at the front of the store and Nunley got a good look at him. Nunley made a U-turn about 100 feet from the intersection, saw the defendants leave the store and run south on Gless Street. They were out of his sight for about five seconds and then he saw a vehicle start up with defendants in the rear seat thereof. Nunley followed the car to the extent of his ability and then stopped and called the police. Officer Teague received the report of the robbery of the liquor store over the police radio system at about 10 p.m. The report included a description and the license number of the car involved, a description of the robbers and a statement that the robbers were armed; further, that they were proceeding southbound on Western Avenue from Exposition Boulevard. The car in which defendants were riding stopped at a traffic light at Western Avenue and Santa Barbara Avenue. Officer Teague and others got out of their car, proceeded on foot to the car in which defendants were riding and directed the occupants of that car to exit. O'Neal was seated in the left rear and Johns was seated in the right rear of the car. Johns made a furtive motion and started to lean over. Officer Teague saw a blue steel automatic pistol on the right floorboard directly in front of Johns. On the floorboard in front of where O'Neal was seated was a chrome-plated revolver. The automatic was fully loaded with a bullet in the chamber and the revolver was fully loaded. On the right side there was a leather glove with some coins in it, and several packages of cigarettes were scattered around. Defendants were arrested, and during the booking process a substantial sum of coins and currency was found on O'Neal. Each of the defendants was further identified at a police lineup.

Johns, as appellant, now asserts that the evidence is insufficient to support the judgment, that he did not have counsel at the lineup, that it was error for the court to refuse to give his proposed instructions on circumstantial evidence and that he was not represented by counsel at the time of sentencing.

■ No useful purpose would be served in repeating the facts as heretofore outlined, suffice it to say that the evidence is amply sufficient to support the judgment of conviction as charged. The positive identification and direct evidence leads compellingly to the conclusion that at the least Johns played the role of a lookout during the course of the robbery in the liquor store and that alone is sufficient to fix him as a princi-

pal in the robbery. (See *People* v. *Masters,* 219 Cal.App.2d 672 [33 Cal.Rptr. 383].)

■ With reference to the lack of counsel at the lineup, this case was tried before *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926] and *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951] were decided. Under the rules of *Stovall* v. *Denno,* 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967], the rule established by *Wade* and *Gilbert* is applicable only to confrontations conducted after the date of *Wade* and *Gilbert,* June 12, 1967. In any event, there was no question of identity in this case. Jaffe and Officer Nunley positively identified each of the defendants as one of the robbers. Furthermore, and in fact, the defendants were in actual flight from the robbery at the time they were arrested. The in-court identification of Johns was in nowise dependent upon the observation of Johns at the lineup, it was based upon an "independent source," namely, observation at the time of the robbery.

■ As to the refusal of the court to give instructions on circumstantial evidence, we are persuaded that the judge correctly decided the problem. The evidence in this case could not have been more direct. (See *People* v. *Downer,* 57 Cal.2d 800 [22 Cal.Rptr. 347, 372 P.2d 107]; *People* v. *Malbrough,* 55 Cal.2d 249 [10 Cal.Rptr. 632, 359 P.2d 30]; *People* v. *Crawford,* 253 Cal.App.2d 524 [61 Cal.Rptr. 472].)

■ Lastly, we are convinced that under the circumstances of this case Johns has no legitimate complaint about being unrepresented at the time of sentencing. On September 7, 1966, Johns was present in court, represented by counsel, for sentencing. Johns wanted additional time in order to obtain different counsel and that request for time was granted. On September 21, 1966, the matter was again continued and Johns' motion to act as his own attorney was taken under advisement. On September 28, 1966, Johns' attorney was relieved from further representing Johns and Johns' motion to appear in propria persona was granted along with certain privileges which Johns had requested. Thereafter, Johns represented himself, appearing in court for that purpose on September 28, 1966, October 10, October 31, and December 7, 1966. Several documents were presented to the court by appellant and at no time did appellant indicate that he had changed his mind and wanted to have an attorney reappointed to represent him. At the time of sentencing appellant engaged the court in a lengthy statement during which at no time did he intimate that he wanted an attorney to represent him or that he had

changed his mind. Appellant now seems to assert that he was incapable of making an intelligent waiver of counsel. The record does not support Johns in any such claimed stupidity or ignorance. In *People* v. *Terry,* 224 Cal.App.2d 415 [36 Cal. Rptr. 722], the court said:

"A defendant may waive counsel [citation], and since a court usually cannot compel a mentally competent defendant to accept representation against his will [citation] it follows that obdurate insistence by such a defendant must be recognized. The court is, of course, under an obligation to explain to a defendant who desires to represent himself the difficulties he will encounter, and to assure that he understands the risks of that course. It is not, however, required to demand that such a defendant demonstrate or possess 'either the acumen or the learning of a skilled lawyer' [citation]. A contrary rule would enable a stubborn defendant to defer his trial indefinitely, to cause repeated continuances even after jurors had been summoned or impanelled, and to make a shambles of court calendars and of the litigation of others equally entitled to the time and consideration of the courts.''

In *Danks* v. *State* (1966) 18 Utah 2d 212 [418 P.2d 488] (cert. denied 385 U.S. 1016 [17 L.Ed.2d 553, 87 S.Ct. 734]), the court disposed of a strikingly similar situation as follows:

"Appellant complains that the trial court erred in not appointing counsel to represent him at the hearing on his motion for a new trial. He had been convicted of the crime of robbery.

"At the time of the preliminary hearing in connection with the robbery charge, appellant was represented by an attorney, Mr. Philip S. Kenny. After the preliminary hearing Mr. Danks asked Mr. Kenny to withdraw from the case. At the time of appellant's arraignment in the District Court, the court appointed Mr. L. G. Bingham to represent him in that court. Mr. Bingham represented Mr. Danks throughout the trial. At the conclusion of the trial, and upon the jury returning a verdict of guilty, appellant then fired Mr. Bingham. At the hearing of the appellant's motion for a new trial, he requested the District Court to appoint another attorney to represent him, which the court declined to do, but did offer to make Mr. Bingham available to assist him, which offer appellant declined.

"Mr. Danks then appealed his case to this Court. Upon appeal Walter R. Ellet of Murray, Utah, represented the appellant. This Court found the evidence was sufficient as a

matter of law to sustain the conviction and affirmed the lower court. Under these circumstances, appellant is in no position to complain about the absence of counsel on the hearing of his motion. There is no obligation on the part of the Court to continue to appoint counsel after the defendant in the case has discharged assigned counsel for no apparent reason. We approve the language in the New Jersey case of *State* v. *Rinaldi*, 58 N.J. Super. 209 [156 A.2d 28].

" 'It is enough that the attorney assigned to the appeal is qualified to represent the prisoner, and that he has advised with him and done whatever possible to represent him competently. Counsel is not required to dance to the prisoner's tune.

" 'Those unfortunate enough to be caught up in the web of the law and who, mistakenly or not, consider themselves aggrieved, must disabuse themselves of the notion now prevailing in certain prison circles that they may accept or reject assigned counsel, as whim or scheme dictates. The right to assigned counsel is not the right to pick an attorney of one's choosing, nor the right to select counsel who will completely satisfy a defendant's fancy as to how he is to be represented.' " (Pp. 488-489.)

True it is that no ritual was pronounced by the trial judge on each occasion that Johns came into court after discharging his attorney and receiving permission to represent himself, to the effect that Johns had a right to have an attorney to represent him. The judge, under the circumstances, was not required to impress upon Johns that he had a right to have counsel (against his expressed desires and request) every time Johns set foot in the courtroom. The court's duty, under the circumstances, ended when Johns discharged his court-appointed attorney and sought and secured permission to represent himself.

If Johns had changed his mind or reconsidered and desired counsel to be appointed at any time after September 28th, he was duty-bound to express himself and so advise the court. The judge is not clairvoyant.

The purported appeal from the order denying motion for new trial is dismissed.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied January 25, 1968, and appellant's petition for a hearing by the Supreme Court was denied February 21, 1968.