Filed 10/29/13  P. v. Blaylock CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H037847 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1072509) |
| v. | |
| IRVIN WARD BLAYLOCK, | |
| Defendant and Appellant. | |

In this domestic violence case, defendant Irvin Ward Blaylock appeals a judgment of conviction following a jury trial.  On appeal, defendant asserts the trial court erred in admitting his interview regarding the crimes into evidence.  In addition, defendant argues the court erred in allowing the prosecutor to charge him with felony criminal threats (Pen. Code, § 422),[1] and corporal injury of a spouse (§ 273.5, subd. (a)), because there was not a transactional relationship between those crimes and the crimes presented at the preliminary hearing.

### STATEMENT OF THE FACTS AND CASE

There were two separate incidents that gave rise to the present case.  The first occurred on February 28, 2010.  Defendant and his wife of 36 years, Debra, argued over a disconnected cell phone.  Debra called the police.  While she was on the phone,

---

[1] All further statutory references are to the Penal Code.

defendant told her if she called the police, she was dead. Defendant disconnected the phone Debra was using, and put his hands around Debra's neck to choke her. The police arrived and arrested defendant. Debra had redness and injuries to her neck that were consistent with her claim that defendant choked her.

Defendant was released on bail on March 2, 2010. Because of the arrest, there was a no contact restraining order put into place. Despite the order, defendant left jail and returned to live with Debra.

The second incident occurred on March 30, 2010. When Debra arrived home from work that day around 4:30, she started drinking. Defendant was at home and was already drunk when Debra arrived. Defendant began to argue with Debra, accusing her of having affairs, calling her names, and complaining about the restraining order. Defendant wanted Debra to call the public defender and change the restraining order from "no contact," to "peaceful contact."

Debra went into the bedroom to get away from defendant. Defendant followed her, continuing to berate her about having the restraining order changed. Defendant grabbed Debra's shirt, breaking the necklace that she was wearing. Defendant then took an ax and hit her with the ax handle, causing Debra to suffer a black eye. Defendant then hit Debra on the head with the sharp end of the ax. Debra's head began to bleed.

Debra was not able to seek medical attention until the next day, because defendant took all the house phones and would not let her use them that night. Debra stated that she would have called 911 if she had access to a phone.

In January 2011, defendant was charged by information with attempted murder (§§ 187, 664), assault with a deadly weapon (§ 245, subd. (a)(1)), personal infliction of great bodily injury under circumstances of domestic violence (§§ 12022.7, subd. (e), 1203, subd. (e)(3)), attempting to dissuade a witness from reporting a crime (§ 136.1, subd. (b)(1), false imprisonment (§§ 236, 237), felony threats (§ 422), and felony

infliction of corporal injury on a spouse (§ 273.5, subd. (a)). The information also alleged defendant had suffered a prior strike conviction. (§§ 667, subds. (b)-(i), 1170.12, 667, subd. (a)).

On May 2, 2011, the court dismissed the false imprisonment count, and on March 4, 2011, the court grated the prosecutions' motion to add a misdemeanor count of violating a protective order, to which defendant pleaded guilty.

On May 9, 2011, the court ruled that the criminal threats and corporal injury on a spouse counts could be charged as felonies.

On May 20, 2011, defendant was convicted by a jury of all counts, except the attempted murder charge, of which he was acquitted. During the trial, the court admitted a transcript and DVD of defendant's interview police officers while he was in custody. In the interview, defendant confessed that he committed the crimes charged.

The court conducted a trial of the strike prior without a jury on May 23, 2011. The court found the allegations of the prior true.

On December 16, 2011, the court granted a motion pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, with respect to the strike prior. The court sentenced defendant to 15 years 8 months in state prison.

## DISCUSSION

Defendant asserts the trial court erred in admitting his in-custody interview with police into evidence at trial, and in allowing the corporal injury on a spouse and criminal threats counts to be charged as felonies.

### *Admission of Police Interview of Defendant in Custody*

Defendant contends that the trial court erred when it allowed the prosecutor to introduce statements he made during his interview with Sergeant Clarke and Officer Carleton while he was in custody into evidence. According to defendant, his statements

3

were inadmissible because they were obtained in violation of his *Miranda*[2] rights after he invoked his right to counsel.

After defendant was arrested, he was taken into custody and questioned by Sergeant Clarke and Officer Carleton. The interrogation was recorded and later transcribed. Both the DVD and the transcript of the interview were admitted into evidence at trial. Defendant challenges the court's finding that he did not invoke his right to remain silent during the interview.

Defendant asserts he invoked his right to remain silent two separate times during the interview. The first occurred 11 minutes into the interview. The officers told defendant that the victim had given her version of the incident, but told them she was "still a little fuzzy" about what happened. The officers continued to press defendant about what happened, and he responded, "I guess I better not say anything right now sir."

Following defendant's statement that he "better not say anything," Officer Carleton asked defendant, "Why don't you want to say anything? This is your opportunity to tell us your side of the story." Sergeant Clarke made a long statement to defendant summarizing what the police knew about the incident, telling defendant that this was his chance to explain what happened and take responsibility for it.

The second incident occurred later in the interview. Defendant told the officers he and Debra were drunk and started arguing because Debra did not want to call the public defender to change the no contact restraining order. Sergeant Clarke stated, "You were drinking. She was drinking I understand that. What happened next? Irvin, what happened?"

There is a disparity in the record about defendant's response to Sergeant Clarke's question about what happened. The transcript of the interview states that defendant said, "*I had to take a piss or something, you know,*" to which Sergeant Clarke responded,

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

4

"[w]ell, well, I want to know— [¶] I understand taking—." Defense counsel stated that he listened to the DVD, and that on the DVD defendant actually said, "*I have to the take the fifth or something, you know*." Defense counsel raised this discrepancy with the court, and the court told him "we will have a [section] 402 hearing this morning." There is nothing in the record showing that a section 402 hearing was ever held.

On appeal, the attorney general asserts that the matter should be remanded to the trial court to conduct a section 402 hearing regarding defendant's statement during the interview. Defendant, on the other hand, asserts this court can review the DVD and determine what was said.

We note that regardless of whether defendant said "I had to take a piss or something, you know," or "I have to take the fifth or something, you know," we find defendant's statement was not an unambiguous and unequivocal invocation of his right to remain silent.

The standard of review for a trial court's ruling on the validity of a *Miranda* waiver is two-part. First, we independently review the trial court's determinations as to whether coercive police activity was present and whether the *Miranda* waiver was voluntary. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1093.) Second, "[w]e review the trial court's findings as to the circumstances surrounding the confession, including the characteristics of the accused and the details of the interrogation, for substantial evidence. [Citation.] 'To the extent the facts conflict, we accept the version favorable to the People if supported by substantial evidence.' " (*Ibid.*)

In the present case, the trial court ruled that defendant's *Miranda* waiver was valid and implied. Defendant does not dispute this finding. The United States Supreme Court established the applicable rule in *Davis v. United States* (1994) 512 U.S. 452 (*Davis*): "[A]fter a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." (*Id.*

5

at p. 461; *People v. Gonzalez* (2005) 34 Cal.4th 1111, 1124 (*Gonzalez*).) The High Court discussed the *Davis* holding in *Berghuis v. Thompkins* (2010) 560 U.S. 370 [130 S.Ct. 2250] (*Thompkins*), and stated that when invoking the Miranda right to counsel, "a suspect must do so 'unambiguously.' If an accused makes a statement concerning the right to counsel 'that is ambiguous or equivocal or makes no statement, the police are not required to end the interrogation, [citation], or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights, [citation]." (*Thompkins, supra,* 560 U.S. at p. ___ [130 S.Ct. at pp. 2259-2260], citing *Davis*, *supra*, 512 U.S. at pp. 458-459.)

"The *Miranda* rule and its requirements are met if a suspect receives adequate *Miranda* warnings, understands them, and has an opportunity to invoke the rights before giving any answers or admissions. Any waiver, express or implied, may be contradicted by an invocation at any time. If the right to counsel or the right to remain silent is invoked at any point during questioning, further interrogation must cease." (*Thompkins, supra,* 560 U.S. at p. ___ [130 S. Ct. at pp. 2263-2264].)

In California, our Supreme Court has instructed that "[c]onsistent with *Davis*, a reviewing court—like the trial court in the first instance—must ask whether, in light of the circumstances, a reasonable officer would have understood a defendant's reference to an attorney to be an unequivocal and unambiguous request for counsel, without regard to the defendant's subjective ability or capacity to articulate his or her desire for counsel, and with no further requirement imposed upon the officers to ask clarifying questions of the defendant." (*Gonzalez, supra*, 34 Cal.4th at p. 1125.) Thus, questioning need not cease where " 'a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, . . .' " (*Id*. at p. 1127.) Additionally, "the reviewing court must 'accept the trial court's resolution of disputed facts and inferences, and its evaluations of credibility, if supported by substantial

6

evidence.  [The reviewing court] independently determine[s] from the undisputed facts and the facts properly found by the trial court whether the challenged statement was illegally obtained.' " (*Id*. at p. 1125.)

Moreover, when read in context and viewed in light of the totality of the circumstances, we conclude that defendant's statements were not unambiguous or unequivocal invocations of his right to remain silent and that, under *Davis*, the officers therefore were not required to end the interrogation or ask questions to clarify whether the defendant wanted to invoke his *Miranda* rights.  (*Davis, supra*, 512 U.S. at pp. 458-459; *Thompkins*, *supra*, 131 S.Ct. at pp. 2259-2260.)  Defendant relies on two of the statements that he made during the interview; "I guess I better not say anything right now sir,"and "I had to take a piss or something, you know," or "I have to take the fifth or something, you know."  In these statements, defendant uses the words "guess," "or something," and "you know," which implies he is not sure of what he is saying. These were not unambiguous and unequivocal invocations of his right to remain silent.  (See, e.g., *Anderson v. Terhune* (9th Cir. 2008) 516 F.3d 781, 788 [suspect "did not equivocate in his invocation" because he did not "us[e] words such as 'maybe' or 'might' or 'I think' "].)

We find the trial court properly admitted defendant's interview into evidence. Defendant did not unambiguously and unequivocally invoke is right to counsel during the interview.

We note that even if defendant did unequivocally invoke his right to remain silent, and the interview was not properly admitted at trial, defendant did not suffer prejudice beyond a reasonable doubt.  (*Chapman v. California* (1967) 386 U.S. 18, 24.)  The evidence of defendant's guilt presented at trial was overwhelming.  As to the February 28 incident, the recorded 911 call where defendant can be heard saying "You are dead," numerous times, and the evidence of Debra's neck injury were sufficient to

support the guilty verdict for corporal injury to a spouse and criminal threats. With regard to the March 30 incident, Debra testified at trial that defendant hit her in the eye with an ax handle, and the head with the blade portion of the ax. The testimony of the responding probation and police officers that they saw blood on Debra and the bed is consistent with Debra's version of the event. The evidence of Debra's head and eye injury and her medical treatment also confirms Debra's allegation that defendant struck her with the ax. Defendant's interview with police was one small piece of evidence of defendant's guilt.

When considered in light of the other compelling evidence presented at trial, the admission of defendant's interview with police, even if error, was not prejudicial to defendant beyond a reasonable doubt. (*Chapman v. California, supra,* 386 U.S. 18, 24.)

### *Crimes Charged as Felonies*

Defendant asserts that the criminal threats and corporal injury counts are not transactionally related to the other charges, and therefore, cannot be charged as felonies. Defendant bases this claim on the fact that the conduct that gave rise to the two added felonies occurred more than a month before the conduct that gave rise to the counts for which defendant was held to answer at the preliminary examination.

Section 739, read together with article I, section 14 of the California Constitution, provides that an information which charges the commission of an offense not named in the commitment order will not be upheld unless (1) the evidence before the magistrate shows that such offense was committed, and (2) that the offense " 'arose out of the transaction which was the basis for the commitment' on a related offense." (*Jones v. Superior Court* (1971) 4 Cal.3d 660, 664–665, quoting *Parks v. Superior Court* (1952) 38 Cal.2d 609, 614.)

In the present case, the evidence before the magistrate established probable cause that the additional two offenses were committed. Defendant does not contend otherwise

8

on appeal. Instead, he argues that the additional offenses were not transactionally related to the counts named in the committing order.

An offense is not transactionally related for purposes of article I, section 14, of the California Constitution if it is "unrelated to or unconnected with the transaction which was the basis for the commitment order." (*Parks v. Superior Court, supra,* 38 Cal.2d at p. 612.) It is not enough that the offenses are of a common scheme or plan; the transactions must be "related or connected." (*Id.* at 613.)

Here, the trial court rejected defendant's argument that the corporal injury and criminal threats were not transactionally related to the other felony charges. The court stated, "In this case, the charged and uncharged offenses involved the same single defendant, the same complaining witness, the same type of activity. . . . Certainly, the [section] 273.6 arises out of . . . the other case because the March offenses were the basis of the [section] 273.6."

In a similar case, the court found an act of abuse was related or connected to other acts of abuse against the same victim because they were each part of a course of conduct of abusing a single victim over a long period of time. (*People v. Downer* (1962) 57 Cal.2d 800, 809-810 (*Downer*).) In *Downer,* the commitment order charged defendant with incest and forcible rape of his daughter on December 5. She testified at the preliminary hearing that he forced her to have intercourse about twice a month over a period of two years, that he forced her to have sex with him on December 5, and that he tried " 'the same sort of thing' " on December 16 but they had a fight and he did not succeed. (*Id.* at pp. 811, see also p. 805.) The information added one count of attempted incest on December 16. That count was "related to and connected with the transaction which formed the basis of the commitment order, [because] [i]t was part of defendant's course of conduct which he had engaged in with his daughter over a long period of time."

9

(*Id.* at p. 809.)  The transactional relationship arose from the "continued series of illicit relations between the same parties." (*Id.* at p. 810.)

Here, as in *Downer,* the additional offenses were transactionally related because they were part of defendant's continuous course of domestic violence on his wife over a period of time. In addition, the additional offenses that occurred on February 28, 2010 gave rise to the no contact order that was the subject of the charged crimes that occurred on March 30, 2010.  Indeed, it was defendant's anger over the no contact order that instigated the March 30 attack on Debra.

Section 739 permits the information to charge "any offense or offenses shown by the evidence taken before the magistrate to have been committed," and the only constitutional limit imposed by article I, section 14 of the California Constitution is that additional offenses must be related to the transaction that is the basis of the commitment order. Both requirements were met here. "There is no constitutional objection to the filing of an information charging a different but related crime shown by the evidence taken before the magistrate bearing on the same transaction involved in the commitment order." (*Downer, supra,* 57 Cal.2d at p. 810.)  The trial court did not err in allowing the additional offenses to be charged as felonies.

### DISPOSITION

The judgment is affirmed.

_____
                        RUSHING, P.J.

WE CONCUR:

_____
       PREMO, J.

_____
       ELIA, J.

10